# WILLIAM E. MAYHEW *vs.* RICH'D S. HARDESTY.

The mortgagee of a term, after forfeiture, has the whole legal estate therein, and is liable on the *real covenants* in the lease whether he becomes possessed of or occupies the premises *in fact* or not.

To make a party liable under the covenants as assignee, he must be the assignee of the *entire term*, for otherwise he is but a mere *sub-lessee*, and as such not liable under the covenants.

An interest in a term for more than seven years cannot be transferred or assigned, except in the mode prescribed by our registry laws, and no acts *in pais* short of a deed, duly executed and recorded, can transfer such interest.

A bond of conveyance executed by a lessee to a purchaser of the lease, does not make such purchaser the *legal assignee* of the *entire term*, and he is not therefore liable under the covenants in the lease.

A covenant to keep insured a *factory*, necessarily embraces the obligation to keep the fixed machinery, necessary to the operation of the factory, insured, among which would be included the water-wheel, shafting and gearing; the term "*factory*" embraces such fixed machinery.

APPEAL from the Court of Common Pleas of Baltimore city.

*Assumpsit* by the appellant against the appellee to recover the amount paid by the plaintiff as premiums for certain policies of insurance. Plea, *non assumpsit*.

*Exception.* The facts of the case appearing by the record are briefly these: Capron and wife, by deed dated the 26th of December 1845, leased to Heath and Snowden, for ninety-nine years, renewable forever, two undivided thirds of certain lands, including certain water privileges appertaining to a factory about to be erected thereon, for the yearly rent of $900. This lease contained a covenant between the lessees, "their heirs, executors and administrators," and the lessor, "his heirs and assigns," that the lessees, "their executors, administrators or assigns" should, during the continuance of the term, "at their own proper cost and charge, insure or cause to be insured, and kept insured from loss or damage by fire, the factories and buildings erected or that may be erected" on the demised premises, in some insurance offices in the city of Baltimore; and should assign, to and for the use of the lessor, two undivided thirds of all the right and interest of the lessors or their executors, administrators or assigns, in each and every such policy of insurance, and shall pay the lessor, his heirs

and assigns, or permit him or them to collect two-thirds of the money received on such policies to pay the rent, or by the permission of the lessor, his heirs or assigns, to apply the money to rebuilding or repairing such buildings as may be destroyed or injured by fire under the policies; and in case of default of the lessees to keep up the insurance or to assign the policies as aforesaid, then the lessor, "his heirs or assigns, may effect insurance thereon for his or their use at the expense of the" lessees, "their executors, administrators or assigns." On the same day the lessees mortgaged to the lessor, to secure the punctual payment of the rent reserved in the above lease, all the machinery and fixtures then in or intended to be placed in the factory in course of erection on the demised premises.

On the 6th of May 1846, and the 13th of January 1849, the lessor conveyed by two deeds, (one moiety by each,) the property in question, subject to the lease above stated, and the mortgaged machinery and fixtures, to Mayhew, the plaintiff, for $10,000. On the 12th of September 1849, the *Avondale Manufacturing Company* having acquired by *mesne* assignment all the interest of the lessees, Heath and Snowden, in the lease and demised property, mortgaged the same, with other property, to Hardesty, the defendant, to secure the payment of certain notes mentioned in the mortgage, the mortgagor covenanting to keep insured the buildings, machinery and fixtures, and until default in payment in the notes as they became due the mortgagor was to remain in possession of the property, but in case of failure to pay the same as they respectively fell due the mortgagee was to enter and possess the property. None of the notes mentioned in the above mortgage were paid at the time this suit was brought, though most of them had long since become due.

In July 1850, Hardesty sold to Mason all his estate and interest in the property mortgaged to him, and Mason, by the authority and consent of Hardesty, then took possession of the same and has since continued to hold it, and has ever since regularly paid to Mayhew the ground-rent reserved by the original lease. The arrears of ground-rent, due at the time of this purchase, was paid by Hardesty to Mayhew out of the

purchase money paid by Mason.  On the 14th of November 1850, Hardesty executed a bond of conveyance to Mason for the property sold, reciting the terms of the purchase, in which, among other things, it was stipulated that Mason should keep the factory and machinery insured until the payment of all the purchase money, and that the equity of redemption of the Avondale Manufacturing Company in the property had been conveyed to Hardesty by deed dated the 14th of November 1850.  It was proved, that at the time of the original lease there were no buildings upon the land except two small houses; that the cotton factory, which was put in operation early in 1846 or 1847, cost, exclusive of machinery, between $8000 and $10,000; and the cost of the movable machinery was from $12,000 to $15,000; that what is called fixed machinery includes the water-wheel, shafting and gearing; that there were two water-wheels of iron to the factory, which cost originally about $450 or $500; that in one of these wheels some alteration was made, which cost less than $400; that the other fixed machinery might have cost $500 or $1000.

It was admitted that neither the original lessees nor Hardesty had done anything in performance of the covenant for insurance in the original lease, between the 13th of October 1850 and the 4th of November 1852.  The plaintiff, Mayhew, insured in the Ætna Insurance Company on the 14th of October 1850, for one year, to the amount of $5000, viz., $2500 on the movable machinery in this factory, and $2500 on the building, paying therefor as premium $100; also in the Franklin Fire Insurance Company of Philadelphia, on the 4th of November 1850, for one year, to the amount of $5000 on the "cotton mill and water-wheel," paying $100 premium; and also in the Ætna Insurance Company on the 14th of October 1851, for one year, to the amount of $5000, viz., $2200 on the building and $2800 "on the fixed machinery, including water-wheel, shafting, gearing," &c., paying $100 premium.  The property mentioned in these policies was on the demised premises at the time the policies were effected. On these facts the plaintiff asked the following instructions to the jury:

61

1st. That the plaintiff, as assignee of the reversion in the property described in the lease from Capron to Heath and Snowden, is entitled to recover the premiums or sum or sums of money paid by plaintiff to procure the insurance effected by the policies given in evidence upon all the property described in those policies, except the property described as movable machinery in the policy of the 14th of October 1850; if they find that the said property was on the demised premises at the respective dates of said policies, and find that none of the notes described in the mortgage to Hardesty, given in evidence, have been paid, notwithstanding that said Hardesty had not possession of said mortgaged premises at the time when said premiums were paid or when some of them were paid.

2nd. That if they find the facts stated in the plaintiff's first prayer, that then the plaintiff is entitled to recover the premiums or proportion of premiums paid for insurances effected on all the property described in all said policies, inclusive of the water-wheel but excepting the property described as "movable machinery" and that described as "shafting, gearings," &c., although said Hardesty had not possession of said mortgaged premises when said premiums were paid.

3rd. That if they find the facts stated in the plaintiff's first prayer, that then the plaintiff is entitled to recover the premiums or a due proportion of the premiums for effecting insurances effected on all the property described in all said policies, excepting the movable machinery, the water-wheel and shafting and gearing, although said Hardesty had not possession of said mortgaged premises when said premiums were paid.

4th. If the jury find the facts stated in the first prayer, and that Hardesty, in July 1850, contracted with Mason to sell all his estate and interest in the mortgaged premises, and to execute, at some future day, a deed therefor to Mason, upon certain conditions, to be performed according to the form and effect of the bond of conveyance, dated the 14th of November 1850, and given in evidence, and that at the time of making this contract Hardesty agreed and stipulated, that Mason should or might take actual possession of and use the premises from and after the time of making this contract, and that in pursu-

ance of this contract and agreement, Mason did take actual possession of the mortgaged premises from and after the time of making the contract, and has continued ever since to hold possession thereof, that then Hardesty is to be considered in this action as a mortgagee in possession from and after the time of this contract; and then the plaintiff is entitled to recover the premiums paid by him to procure the insurance effected by the policies given in evidence upon all the property described in those policies, except the property described as "movable machinery" in the policy of the 14th of October 1850, if they find that none of the notes described in the mortgage to Hardesty, given in evidence, have been paid, and if they find that said policies were all effected after the date of the contract between Hardesty and Mason.

5th. If the jury find the facts stated in the first and fourth prayers, then the plaintiff is entitled to recover a due proportion of the premiums paid for effecting insurances on all the property described in all said policies, inclusive of the water-wheel, but excepting the movable machinery and that described as shafting and gearing.

6th. If they find the facts stated in the first and fourth prayers, then the plaintiff is entitled to recover the premiums, or a due proportion of the premiums, paid for effecting insurances on all the property described in all said policies, excepting the movable machinery, the water-wheel, shafting and gearing.

The court (MARSHALL, J.) rejected each and all of these prayers, and to this ruling the plaintiff excepted; and the verdict and judgment being against him, appealed.

The cause was argued before LE GRAND, C. J., ECCLESTON and MASON, J.

*Edward O. Hinkley* for the appellant, argued:

1st. That a covenant to insure runs with the land and binds assignees, and the covenant in the present case expressly includes them. 6 *G. & J.*, 381, *Thomas vs. Vonkapff.* The appellee is mortgagee of the tenant, and as such is assignee in

law and is liable, *even though not in possession*, for default had been made, none of the notes secured by the mortgage having been paid, and the first of them having become due in March 1850, long before insurance was effected, and the mortgagee then having the right to possession both by law and by the express terms of the mortgage. 4 *Kent*, 145. 1 *Brod. & Bing.*, 238, *Williams vs. Bosanquet*. 4 *Leigh*, 69, *Farmers Bank vs. Mutual Assurance Society*. 15 *Verm.*, 489, *Pingry vs. Watkins*, and the same case in 17 *Verm.* The very point has been decided by this court in *Hintze vs. Thomas*, 7 *Md. Rep.*, 346.

But most clearly the appellee is liable if in possession, and his *acts are equivalent to taking possession*, for he sold to Mason, who immediately took possession, in July 1850; that is, before the insurance was effected: and afterwards, on the 14th of November 1850, the *equity of redemption* was conveyed to the mortgagee, as appears by his reference to that fact in his bond of conveyance to Mason.

2nd. As to the extent of the appellee's liability: The word *factories* includes the fixed machinery; that is, the water-wheel and the shafting and gearing, for it is proved by a competent witness, that "what is called fixed machinery includes the water-wheel, shafting and gearing," and the language of one of the policies is, "on the fixed machinery, viz., the water-wheel, shafting, gearing," &c., showing clearly the opinion of the insurance company, that those things were fixed machinery, and showing their intention to hold themselves liable therefor. It is to be observed, that the appellant did not claim for any movable machinery: all his prayers expressly exclude that. Now does the word *factory* embrace *fixed machinery?* Most clearly it does, for the reason that without machinery the buildings are not *factories*, and the language of the covenant is particular, "buildings *and factories*." It is also to be observed, that the mortgage to the appellee expressly includes the machinery and fixtures as well as the land, and so does the bond of conveyance from the appellee to Mason. But even independently of the word *factories*, the covenant to insure the *buildings* would include *fixtures*, because they would

pass by a conveyance of the land, and so would be covered by a covenant running with the land. 11 *Barbour*, 43, 62, 64, *Buckley vs. Buckley.* 3 *Md. Ch. Dec.*, 186, *McKim & Kennedy vs. Mason,* and cases there cited. 1 *Ohio State Rep.*, 528, *Teaff vs. Hewitt.*

*F. K. Howard* and *S. T. Wallis* for the appellee.

The plaintiff below offered six prayers, all of which were rejected. From that rejection alone the appeal is taken. The *onus* is therefore on the appellant to show that at least one of his prayers should have been granted, in the identical shape in which it was presented. This court cannot go behind the prayers to look for merits, of fact or law, which the appellant's case may be supposed to possess, but which the prayers either do not embody, or embody in a connexion which it would have been error to adopt. The action of the court below must be judged by the prayers which were before it, and not by propositions, which might have been, but were not.

Of the six prayers, the first, second and third assert that Hardesty, as mortgagee, is responsible on the covenant to insure, though he may never have been in possession. The fourth, fifth and sixth assert, that by his contract with Mason, and Mason's possession thereunder, Hardesty, in contemplation of law, was actually in possession and so responsible on the covenant. Let us first assume, for the sake of argument, that the two sets of prayers are not otherwise defective or erroneous than in the two propositions which they thus principally set up, viz:

1st. That the mortgagee of a term, out of possession, is liable for covenants running with the land; and 2nd. That the possession of a purchaser under a bond of conveyance is the possession of the vendor, so as to make the latter liable for such covenants, as an assignee in possession.

1st. It is respectfully submitted, that some overruling legal necessity alone will induce this court to fix on a mortgagee, out of possession, a responsibility for his mortgagor's covenants. It is common learning, that if the lessee sub-lets, by way of mortgage or otherwise, reserving a reversion of but a single

HARVARD LAW SCHOOL LIBRARY

day, the sub-lessee is free from the covenants. He is not an assignee, in name, though he is in fact. The twenty four hours save him. An assignee, it is conceded law, may assign to a pauper, avowedly to get rid of the covenants, and the pauper's responsibility at law, (though he has none in fact,) discharges the liability of his assignor. Surely there cannot be any peculiar sanctity in a rule of responsibility, which may be legitimately reduced to a practical absurdity by such simple processes. Surely a liability which is so purely nominal, that it attaches to a man merely when you call him an "assignee," and ceases to bind him as soon as you call him something else, though he in fact remains the same, cannot depend upon any vital principle of policy or jurisprudence. It must belong to that class of doctrines which the authorities denounce, when they say that "to stick at the letter is to stick in the bark"— *qui hæret in litera hæret in cortice.*

But, even if the doctrine has any thing sound in it, as applied to absolute assignees—owners of the term—it certainly has not, in its application to mortgagees, who, as every body knows, are not owners of the term in fact, no matter how strenuously you may endeavor to prove them so by definitions. Courts of law, in the progress of civilization, have at last grown to regard mortgages as what they are—securities and nothing more. You need not go into equity now to learn that a security for a debt is not a landed estate—that it is a mere collateral to the debt which it secures. The courts have at last acknowledged consciousness of the fact, that an estate in land, which may be extinguished by the payment of a promissory note, and amounts to nothing till the note is due and unpaid, is not of much higher dignity than the promissory note itself. Thus, happily, men's rights and reason are no longer smothered under old scholastic phrases, and the securities of a commercial community have ceased, in a measure, to be regulated by the statute of "*Quia Emptores.*"

In Maryland our legislation has been in aid of this progress of ideas. A mortgage in fee-simple is no longer any thing, in fact, but a chattel interest with us. By the acts of 1833, ch. 181, and 1839, ch. 26, the interest in the land devolves,

with the debt, on the executor, whose release is made equivalent to a reconveyance by the heirs.

Nor have our courts been at all behind the legislature, in relieving us, on this point, from the fictions of feudal pedantry. An outstanding mortgage, if paid in fact, cannot be set up in ejectment against the mortgagor, though it may not have been paid till after forfeiture. (*Morgan vs. Davis*, 2 *H. & McH.*, 9.) Nor can a mortgagee, who has been paid, but who still retains the legal title, recover in ejectment against the mortgagor's assignee. (*Paxon vs. Paul*, 3 *H. & McH.*, 399.) In the former of these cases the court decides, in terms, what is, in substance, necessarily determined in them both, that by payment "the mortgage was discharged, and *the estate of the mortgagee defeated, in law and equity*," though the legal title was still outstanding in him. One would think that after this there should be an end to all superstition about the empty shell of the mortgagor's "legal estate." The late Court of Appeals indeed expressly determined, further, that the mortgagor is regarded in law, as in equity, as the substantial owner, until foreclosure, his estate being, at law, responsible for his debts under attachment or execution. (*Ford vs. Philpot*, 5 *H. & J.*, 312. *Dougherty vs. McColgan*, 6 *G. & J.*. 285.) This court itself, pursuing the same enlightened course of decision, has determined, (*Georges Creek Coal & Iron Co. vs. Detmold*, 1 *Md. Rep.*, 237,) that a covenant in a mortgage, for the mortgagee to hold until default, is equivalent to a re-demise from the mortgagee, and revests the legal estate in the mortgagor, so as to enable him to maintain ejectment.

With what show of consistency then, in view of these decisions and our statutes, can the appellant ask this court to say, that a mortgagee of a term, not in possession—not enjoying the profits—a mere holder of an unappropriated security—is, by virtue of his having the naked "legal estate" in him, an assignee of the whole term, and bound by the covenants of the lease? That he is not the owner of the term in equity, (which means simply that he is not in fact,) is conceded. It is his being clothed with the "legal estate" which alone creates his liability. But if a mortgagee in fee, though clothed

with the nominal legal estate, does not pass it to his heirs; if the legal estate of a satisfied mortgagee, though still a legal estate, will not maintain or defeat an ejectment, which is a mere matter of legal estate; if a mere covenant for possession, till default, which, on the strictest principles, is perfectly consistent with the existence of a present legal estate in the mortgagee, is yet construed to be a re-demise, and to render the actual legal estate of the mortgagee no legal estate at all for the time being; whence shall come the sanctity which is sought to be attached to the mere legal estate here? It is the same mortgage—the same legal estate—the same policy—the same principle—throughout. Why then set up the shadow in the one isolated case, when you regard the substance, only, in all the others? Why adhere to one incident only of the legal estate, when you repudiate all the rest? Why make the solitary exception in a case, where you admit that the rule is a technical and verbal one only, by conceding that the trick of a sub-lease or an assignment to a pauper may demolish it altogether? It is no answer to say that this is a case at law, and that the constructions and doctrines of equity have nothing to do with it. Not one of the decisions referred to can stand upon that theory. Every one of them involves the absolute subordination of the mortgagee's legal title at law, to the broad and liberal application of the principles of equity. Uphold the doctrine contended for here, and you reverse them all—establishing in the stead of the rational principles which they embody, the singular doctrine, that a mortgage, which is meant for a security to a creditor, is but a mode of entrapping securities for the lessor of the debtor. It can only be done, it is respectfully submitted, by ignoring utterly the nature of a mortgage, as understood and expounded in modern days, and going back to the times when Glanvil and Skene expatiated *de mortuo vadio.*

The case of *Eaton vs. Jacques,* 2 *Douglas,* 456, in which Lord Mansfield repudiated the liability of a mortgagee out of possession, upon the covenants in the lease, would be conclusive from its reasoning if not from the authority of the great judge who pronounced it and the able associates who con-

curred with him in it. In spite of the case of *Williams vs. Bosanquet,* by which it has been overruled in England, it has not ceased to command the support of the most eminent authorities in this country.

*Astor vs. Miller,* 2 *Paige,* 68. *Astor vs. Hoyt,* 5 *Wendell,* 603. *Walton vs. Crouly,* 14 *Wendell,* 63. *Wittington vs. Sale,* 7 *Mass.,* 139. *Cushing vs. Hurd,* 4 *Pick.,* 253. *Cooper vs. Davis,* 15 *Conn.,* 560. *Wilkins vs. French,* 20 *Maine,* 117. *Smith vs. Taylor,* 9 *Alab.,* 637. And see *Greenleaf's Cruise, title* 15, *secs.* 15, 16, *p.* 111.

The Supreme Court of the United States, in *Culvert vs. Bradley,* 16 *Howard,* 580, has left no doubt of its determination to adopt the doctrine of Lord Mansfield whenever the case shall arise.

It is the conceded doctrine already, in all our courts, in regard to the liability of mortgagees of ships for repairs done while the mortgagors remain in possession, and it seems impossible to draw a distinction, in principle, between those cases and cases like the present; the liability in both being sought to be affixed to the legal title, and that title in both being a matter of record, independent of possession.

Nor is there any foundation for the argument, that this court itself has held differently in the case of *Hintze vs. Thomas,* 7 *Md. Rep.,* 346. That cause was heard and determined on a case stated, and it is part of the statement itself, that upon the forfeiture of the mortgage, *"by the terms thereof,* Hintze became *the absolute assignee at law."* The court therefore was bound, according to its own repeated decisions, to adhere to the case stated, and it consequently treated Hintze as "absolute assignee" throughout. The obligations of mortgagees, whether in or out of possession, were not discussed by the counsel, (as reported,) nor considered by the court. The word "mortgage" does not occur once in the whole opinion, nor are mortgagees once alluded to.

It is, of course, obvious, that in the case of an absolute assignment, (as in *Hintze vs. Thomas,*) it makes no difference whether the assignee does or does not take possession. He is the absolute representative in responsibility of the original

62    v.8

covenantor. But as a mortgagee, even after forfeiture, is, under our decisions, only owner *sub modo*, with qualified rights; he is only, *sub modo*, exposed to responsibility. The possession, which clothes him with the profits of the term, thus becomes an indispensable item among the considerations which are to fix its burdens on him.

It is therefore a palpable *non sequitur* to argue, that because an absolute assignee has been held liable, (in *Hintze vs. Thomas*,) without possession, an assignee, by way of mortgage and out of possession, has the same liability. The law may be so, but that case does not decide it, and the argument to the contrary merely begs the whole question by assuming the identity, *quoad hoc*, of mortgagees and absolute assignees, which is precisely the matter in dispute.

So much for the first three prayers, so far as their main principle is concerned.

2nd. Is it true, as is asserted by the last three prayers, that Mason's possession was Hardesty's?

One of the interest notes secured became due to Hardesty on December 15th, 1849. He, however, never took possession, but, on July 8th, 1850, contracted to sell the property to Mason, who immediately took possession under the contract, having paid part of the purchase-money and given notes for the rest. On November 14th, 1850, Hardesty, for the first time, received a deed of the Avondale Factory's equity of redemption, and he, on that day, *uno flatu*, executed a bond of conveyance to Mason, conditioned to convey, on payment of the notes given in July 1850. Mayhew himself was, however, assignee of a mortgage of the leasehold interest in the machinery and fixtures of older date than Hardesty's mortgage, nay of the same date with the original lease, viz., December 26th, 1845, so that Hardesty, so far as the machinery and fixtures were concerned, never had the legal estate at all in the term. His legal estate in the term, as to the buildings, he passed away the moment he acquired it, and he never had any actual possession. With a part of Mason's purchase-money he paid the arrears of ground-rent before Mason took possession in July 1850, and from that time forth, Mason,

being in possession under the bond of conveyance and in his own right, regularly paid the ground-rent to Mayhew, who as regularly received it from him.

Can such a possession be called the possession of Hardesty? If it cannot the last three prayers were properly rejected, even supposing them to be erroneous in no other particular.

This is not a question, as supposed in the argument, as to whether Mason was, at law, the assignee of Hardesty's whole interest. Upon the most rudimental principles, he, of course, was not.

But still there is no analogy between his case and that of a sub-lessee. Hardesty retained no reversion. Mason was the assignee in equity of the whole beneficial interest, subject, of course, to the terms of the bond of conveyance, and the question is, whether being thus, in fact, in possession, in his own right, he was, in law, in possession in Hardesty's, merely because he had not the technical legal estate in him? There seems to be a very simple mode of testing the matter.

In a case fairly raising the question, could there be any doubt that Mason's possession was adverse to Hardesty? Obviously not. It was a possession by Mason as purchaser, not as tenant, in his own right, and in that of no one else. It would have given a legal title, of itself, if continued long enough. How then could it be adverse and not adverse at the same time? How could it be Mason's possession and Hardesty's likewise, when the one was directly antagonistic to the other and irreconcileable with it?

The possession of a purchaser, under an unrecorded deed, is so far notice to all the world as to avail, under our statutes, against every one but a bona fide purchaser for value by deed recorded. (1831, ch. 304.)

So possession under a bond of conveyance will carry the legal title, under a decree in equity, against intermediate judgment creditors, (Alexander vs. Ghiselin, 5 Gill, 181,) the registry laws to the contrary notwithstanding. Where then can this court find authority for treating such a possession as nothing at all? It is no answer to say that Mason could not be sued at law as assignee, and therefore the right of action

must remain against Hardesty. In the very case of *Hintze vs. Thomas,* 7 *Md. Rep.,* 351, this court has itself determined, that assignees may be liable in equity for breaches of covenant, and can there be any doubt that Mason, in possession in his own right, under an equitable title, might have been made liable in equity if not at law? Even at law, could not Mason have been estopped from denying that privity of estate which sustains the remedy against an assignee after he had taken possession in his own right and paid rent under the lease?

3rd. But the prayers could not have been properly granted, even if the appellant's view of the preceding propositions be correct.

The 2nd, 3rd, 5th and 6th prayers are erroneous, because uncertain and inconsistent in their terms and alternatives. They instruct the jury to give "the premiums *or* proportion of premiums paid;" "the premiums *or* a due proportion of the premiums paid," and "*due proportions* of the premiums paid." The plaintiff, if entitled to recover at all, was entitled to the whole premiums paid or to a portion of them. It was for the court to say whether he should have the whole or a part, and if a part it was for the court to determine what part. The court would have manifestly erred in leaving it to the jury to give the whole or a part, in their discretion, and to determine, if they gave a proportion, what proportion was the "due" one.

The 1st and 4th prayers are clearly defective in asserting the appellant's right to recover the whole premiums paid "for insurance on all the property," when the covenant, in terms, only provided for the insurance of a two-thirds interest.

The 1st, 2nd, 4th and 5th prayers are further erroneous, because they assume the right of Mayhew to insure the "machinery and fixtures" at Hardesty's expense. The covenant is to insure the "factories and buildings" only to the extent of a two-thirds interest. There were no "factories" on the land at the time, and all the machinery and fixtures in existence were at another place. These fixtures and machinery were, by deed of even date with the lease which contains the covenant, mortgaged to the lessors as a security for the rent,

together with all other machinery and fixtures which might thereafter be put up, &c. That mortgage of machinery and and fixtures has been assigned to Mayhew, the present appellant. Now one of two things is clear: Either the machinery and fixtures are mere chattels, or they are attached to and pass as part of the realty. If they are mere chattels it seems impossible to determine that they are covered by a covenant to insure "buildings and factories," or that such a covenant runs, as to the chattels, with the land. If they are attached to the realty then Mr. Mayhew is assignee of a mortgage of part of the leasehold premises, and must, upon the appellant's own doctrine, be liable under the identical covenant here sued on; he being, *quoad hoc,* in precisely the same relation to the lease that Hardesty occupies, with the additional difficulty of being a prior mortgagee. In either case the prayers referred to must be bad. In the one, supposing the fixtures, &c., to be chattels, Mr. Mayhew is estopped from asking that he be allowed to insure them as "buildings" at Hardesty's expense. In the other, if they are an interest in land Mayhew is clearly precluded from fixing on Hardesty, as the prayers require, the duty to insure the whole, for the insurance of part of which he is, himself, on his own doctrine, bound. As mortgagee of the leasehold interest in the machinery and fixtures he cannot escape from the obligation to keep them insured, if there be anything at all in the theory of his own case; and being so obliged he had no right to ask, and the court would have erred in instructing the jury, that Hardesty was liable for the whole. At the most Hardesty could only have been liable for the proportion which the value of the buildings might bear to the machinery and fixtures, and the prayers were erroneous in ignoring this. The same error, in fact, pervades and vitiates all the prayers.

4th. There is a still further and fatal objection to all the prayers, which is, that assuming Hardesty to be assignee of the term, and liable as such, in virtue of his privity of estate, they overlook the conclusive fact that Hardesty was only mortgagee of an equity of redemption and not of a legal estate. Besides the interest in the machinery and fixtures, which

Mayhew holds under the first mortgage of all, Capron had a mortgage of the legal estate of the term. It is true he joined in the mortgage to Hardesty, but, distinctly, not for the purpose of abandoning his estate. It was only to waive his priority of payment.

It will be further observed, that all the prayers treat Hardesty as mortgagee. None of them advert to the deed of the 14th of November 1850, by which the Avondale Factory passed its equity of redemption to him. Indeed none of them require the jury to find the execution of even the original lease or the mortgage to Hardesty. They all assume and take, distinctly, from the jury these fundamental facts of the case. It is respectfully submitted, that not one of the prayers can be indicated which was not properly rejected under this court's repeated decisions, on that ground if on no other.

MASON, J., delivered the opinion of this court.

The principal questions raised upon this appeal are:—first, whether the appellee, Hardesty, as mortgagee of the term, notwithstanding he never took possession of the premises, is liable under the real covenants of the assignor? secondly, if he was, did not the sale and bond of conveyance to Mason, accompanied with possession, so far amount to a legal transfer of all his interest, as to make Mason, and not himself, liable under the covenants? and thirdly, if not liable as mortgagee out of possession, or if there has not been a complete transfer of all interest to Mason, so as to make him liable, will not the possession of Mason, under the peculiar circumstances of the case, be regarded as that of Hardesty, so as to make him mortgagee constructively in possession?

In settling the first two questions, we need not look to the English authorities nor to those of our sister States, as we think the decisions of our own Court of Appeals have settled both. The third question, therefore, becomes unimportant.

By a close inspection of the case of *Hintze vs. Thomas,* 7 *Md. Rep.,* 346, it will be found that the principle is clearly recognised, that where a party takes an assignment of a lease, as in the present case, the whole legal estate passes, and he

thereby becomes liable on the real covenants, whether he became possessed, or occupied the premises, in fact, or not.

This is also now the law in England, notwithstanding the earlier decision of *Eaton vs. Jacques, Doug.*, 455, to the contrary. *Williams vs. Bosanquet*, 1 *Brod. & Bing.*, 230, 5 *Eng. Com. Law Rep.*, 72. The same rule prevails at least in some of our sister States. *Pingrey vs. Watkins*, 15 *Verm. Rep.*, 679.

But it is contended by the appellee's counsel, as his second ground of defence, that even if he had been liable, by mere force of the mortgage, to him, and without possession, such liability was divested by the sale and bond of conveyance of his interest to Mason, and the possession of the latter thereunder.

This is not a correct legal assumption. Unless Hardesty transferred to Mason his *entire* interest or term, the latter would not thereby be an assignee, but a mere sub-lessee, and as such not liable under the covenants. The case of *Peter vs. Schley*, 3 *Har. & Johns.*, 211, determines, that such an entire interest as is ascribed to Mason, that is, an interest for more than seven years, cannot, under our registry laws, be transferred or assigned in any other way than that prescribed by those laws, and that no acts, *in pais*, short of a deed duly executed and recorded, are competent for that purpose, (act of 1766, ch. 14.) Mason, therefore, cannot be regarded as the legal assignee of Hardesty's entire interest, and is not on that account liable to the appellant.

We are also of the opinion, that the term *"factories"* embraces the fixed machinery necessary to operate the factories, and the reason is, that without such necessary machinery, the buildings would not in fact be factories. A building is no more a factory without machinery, than machinery would be a factory without a building. A covenant, therefore, to keep insured a *factory*, necessarily embraces the obligation to keep the machinery necessary for the operation of the factory also insured: among such necessary fixed machinery would be included the water-wheel, shafting and gearing.

In the main, we think the theories of the appellant's first

three prayers are correct, but we do not deem it necessary to affirm all the legal propositions advanced by each of those prayers. The last three prayers, which rest upon the notion that Mason's possession should be treated as the possession of Hardesty, need not be passed upon in the view we have already taken of the case.

We reverse the judgment, in order that the Court of Common Pleas, upon another trial, may instruct the jury in accordance with the principles herein announced.

*Judgment reversed and procedendo awarded.*