MARY G. WORTHINGTON *vs.* ARIETTA COOKE and ISRAEL COOKE, her husband.

*Covenant running with the Land—Liability of a Féme Covert to be sued at Law upon her separate Covenant in a Lease— Uniting her Husband as Co-defendant a misjoinder—Construction of sec. 2, of the Act of 1867, ch. 223.*

The second sec. of the Act of 1867, ch. 223, provides that " In all deeds hereafter made to married women of real estate or chattels real, it shall be competent for the grantee or lessee to *bind herself* and *her assigns* by any covenant running with or relating to said real estate or chattels real, the same as if she was a *féme sole.*" A deed of lease to a married woman made subsequent to this statute contained her separate covenant to pay a certain annual rent for the demised premises, and all taxes thereon. In an action against her and her husband for the breach of her covenant, it was upon demurrer HELD :

1st. That the covenant to pay rent and taxes was one that runs with the land, and is embraced by the terms of the statute.

2nd. That the remedy upon such covenant is by action at law.

3rd. That the husband should not be joined as co-defendant.

APPEAL from the Baltimore City Court.

The case is stated in the opinion of the Court.

The appellees were the defendants below and demurred to the plaintiff's declaration. The Court below, (GAREY, J.,) sustained the demurrer, and the plaintiff appealed.

The cause was argued before BARTOL, C. J., MILLER, ALVEY and ROBINSON, J.

*L. L. Conrad,* for the appellant.

The Act of 1867, ch. 223, sec. 2, empowers a married woman as lessee or grantee, not only to bind *herself* but

her *assigns;* and the extent of that power is defined to be "the same as if she was a *féme sole.*" A man would have no greater power. It endows a married woman, therefore, with the very fullest capacity to covenant within the limits prescribed by the Act. It is obvious, too, that such covenant was intended to be her *personal* obligation, for she is authorized to "bind *herself.*" The capacity to contract given her by this statute was designed to be a new capacity—one not possessed by her before, namely, to bind herself personally. The statute was unnecessary, if its object was to enable her to bind her separate estate; that she was competent to do without this statute. Besides, the language of the Act is free from ambiguity, and invests her unmistakably with power to "bind herself and her assigns." This language is in the usual form in which *personal* covenants are made.

Covenants to pay rent and taxes are covenants "running with the land," by which is meant that they follow the land into the hands of the assignees, and bind them during their holding through privity of estate. That is all. A covenant running with the land is no less a *personal* covenant than one not running with the land. Its effect is not to subject the land to any lien or charge, or create any other liability than a personal obligation to fulfil the covenant, or to answer for its breach. *Lester vs. Hardesty,* 29 *Md.,* 50 ; *Mayhew vs. Hardesty,* 8 *Md.,* 479.

Such being the case, the inquiry recurs, ought the covenantor to be sued for a violation of her covenant, at law or in equity ?

It is clear that under the decisions of this Court there was no remedy in equity.

Courts of equity undoubtedly exercise peculiar jurisdiction in regard to the persons and property of married women; and principally in regard to their property. 2 *Story's Equity Juris , sec.* 1366.

It is also true that such Courts concern themselves, not with the general property of married women, but with their separate property.

In equity, however, a married woman possesses power to dispose of her separate estate; and such estate is liable for all debts, charges, encumbrances and other engagements which expressly or by implication she charges thereon. Her agreement, however, creating the charges is declared to be not a contract, but an exercise of her power of disposition—an appointment *pro tanto* out of the separate estate; for as a *féme covert,* even in equity she is held incapable of contracting. 2 *Story's Equity Juris., sec.* 1399.

In *Francis vs. Wigzell,* (1 *Mad.,* 258,) Sir THOMAS PLUMMER said: "There is no case in which this Court has made a personal decree against a *féme covert.* She may pledge her separate property and make it answerable for her engagements, but where no particular fund is sought to be charged, but only a personal decree against her, the bill cannot be sustained." *Aylett vs. Ashton,* 1 *Mylne & Craig,* 105–111; *Francis vs. Wigzell,* 1 *Mad.,* 258; 2 *Story's Equity Juris., sec.* 1397, and especially *note* 1.

In Maryland it is settled law that a married woman cannot bind or affect her separate estate, unless the obligation sought to be enforced presents upon its face some evidence of the intent to charge the estate, or there be some evidence *aliunde* tending to prove such intent. *Koontz vs. Knabb,* 16 *Md.,* 549; *Jackson vs. West,* 22 *Md.,* 84; *Wilson & Hunting vs. Jones,* 46 *Md.,* 349.

It is perfectly clear that the covenants under consideration in the case at bar, being simply covenants to pay ground-rent, taxes, &c., in the usual form, neither expressd nor implied an intent, nor were designed, to bind the separate estate of the covenantor.

This being established, and it being true as matter of law, as heretofore shown, that equity has no power against

a married woman *in personam*, it appears perfectly plain that the appellant had no remedy in equity against the appellant, Arietta Cooke.

The next question is, was she also without remedy at law ?

The affirmative of this question involves the assertion that she had no remedy at all.   There is no escape from this consequence.   The appellees gravely ask this Court to decide that in Maryland there may exist a perfect obligation—a contract legal in form and made between persons legally competent to make it, without any remedy to enforce it.

By the common law a married woman could be grantee in a deed, without the consent of her husband.   He might, it is true, divest the estate by dissent.   But if he neither agreed nor disagreed, the purchase was good. *Baxter vs. Smith,* 6 *Binn.,* 427 ;  4 *Cruise Dig.,* 25.

She might even be grantee upon condition, and would be bound to perform the condition.   1 *Roll. Abr.,* 421 ; 2 *Cruise Dig.,* 35 ;  *Patterson vs. Robinson,* 25 *Penn.,* 82.

The Code having endowed her with legal independence, so to speak, doubts might well exist, as recited in the preamble of the Act we are considering, whether a power to covenant did not arise in her as a proper and legal consequence of her legal independence, and as incident to her legal ownership of property.

It was, in order to set such doubts at rest, and to make her responsibilities commensurate with her rights, that the Act of 1867 was passed.

It was contended below, that, inasmuch as sec. 2 contained no provision of special remedy for breach of the covenants therein authorized to be made, therefore, whatever its purpose, the section must be held to be ineffectual.

We are not able to see the force of this conclusion No need existed that any special remedy should be provided.   Remedy for breach of covenant already existed,

and had existed and been pursued from times of imme-
morial antiquity. If legal capacity to make a covenant
existed, the remedy was ready at hand. The authority
to "*bind* herself" carried with it legal responsibility as a
necessary consequence. Can it be said that any one can
"*bind*" himself, if the obligation may not be enforced.
There is no such thing as a "binding" obligation that
cannot be enforced. The enforceability alone makes it
*binding.* That is what is meant by being *bound*, namely,
that the obligation *is* enforceable. If it is not enforce-
able, then you are not bound. To hold otherwise would
be to say that a "binding" obligation may be one that is
*not* binding.

This Court has never decided, nor do we believe it
possible for any Court to decide, that there exists any
contract authorized by law, made by a person legally
competent to make it, for breach of which there is abso-
lutely no remedy. Such a decision would be an anomaly
in judicial history, and involve a feebleness of judicial
power, and a failure of justice, without precedent or
analogy.

This Court has declared explicitly that in Maryland, at
least, there is no right without a remedy. In " *Wright
vs. Freeman*" it said, "Now the proposition is most true,
that wherever the law gives a right it also gives a remedy
for the violation of such right. *Wright vs. Freeman*, 5
*H. & J.*, 475 ; *County Comm'rs of Anne Arundel Co. vs.
Duckett*, 20 *Md.*, 478.

The remaining question arising out of the record in
this case is : was the husband properly joined as co-defend-
ant ?

In *Bridges & Woods vs. McKenna*, 14 *Md.*, 266–267,
this Court held, that where the property of a married
woman, doing business as sole trader under the 8th sec.
of the Act of 1842, ch. 293, (incorporated into the Code
as sec. 7 of Art. 45,) was attached for her debts, her hus-

band must be sued as co-defendant. The Court says: "The statute enables her to acquire and dispose of certain property as a *féme sole*, but does not entirely remove her disability. Being *covert*, she cannot sue or be sued in a Court of law as a *féme sole;* that is to say, without the joinder of her husband. *Bridges, &c. vs. McKenna*, 14 *Md.*, 266–267; *Hubbard vs. Barcus*, 38 *Md.*, 174.

To the same effect is the decision in *Hancocks & Co. vs. Madame Demeric—Lablache*, 3 *Common Pleas Div.*, (*Law Reports,*) 147, &c.

That case arose under sec. 1 of the Statute, 33 and 34. Victoria, ch. 93, (the married woman's property Act, 1870,) which declared that any earnings, wages and property acquired by a married woman in any employment carried on separately from her husband, should be deemed property settled to her separate use, independent of her husband.

In a suit brought by creditors to subject property acquired under this section, to the payment of the married woman's debts incurred in the course of her employment, it was held, that the husband must be joined as co-defendant.

The reasoning supporting this decision is analogous to that in *Bridges, &c. vs. McKenna*, above cited.

In "*Anonymous, 6 Mod.*, 239, (*case* 349,") it was held, that covenant will lie against husband and wife upon a deed of demise to the wife, *dum sola*, whereby she covenanted that she would every year, during the term, plant so many oak plants on the premises.

It will be observed that the Act of 1867, sec. 2, authorizes a married woman "to *bind* herself as a *féme sole;*" but it would seem from principle and analogy that, being married, she should be sued as a *féme sole* would be sued after marriage, upon her contract made *dum sola;* namely, jointly with her husband.

In *Brown vs. Kemper*, 27 *Md.*, 666, this Court held, that in an action of tort against husband and wife jointly

for the tort of the wife, where judgment was recovered against them both, a *fieri facias* might properly issue and be levied on the separate property of the wife.

Here the husband was made responsible for the wife's tort, as a consequence of marriage, and the separate property of the wife was held seizable at law under the judgment. What reason or principle forbids a similar judgment in the case at bar, qualifiable in the discretion of the Court, by controlling its form, so as to make execution issuable only against the wife's property?

*Wm. A. Hammond,* for the appellees.

It will not be denied that at common law a married woman could in no case be sued upon a mere personal contract, made during coverture. *Mayer vs. Soyster,* 30 *Md.,* 402.

Even a judgment by default, regularly entered against her, will be treated as a nullity, and will be enjoined in equity. *Griffith vs. Clark,* 18 *Md.,* 457.

If the Act of 1867, chapter 223, alters this law, it should do so in clear and explicit terms. Being in derogation of such firmly established common law principles, it will be construed strictly, and if effect can be given to its provisions by any other reasonable construction, this Court will be slow to hold that it allows a married woman to be sued at law upon a contract into which she may enter, without the concurrence of her husband.

The first section gives the right of distraint, and in case of no sufficient distress being found, it authorizes re-entry *for non-payment of rent,* but for no other reason.

It frequently happens, however, that it is important to introduce other covenants and conditions into the lease besides those in reference to the payment of rent, distress and re-entry. The land may be required to be improved in a particular manner, or its use may be restricted to a particular purpose, and a violation of the covenants in

these and a variety of other respects may work a forfeiture of the lease. It is submitted that the second section of the Act was intended to cover covenants or conditions introduced for the purpose above named; and the Legislature wisely refrained for attempting to enumerate all such cases, and contented itself with authorizing the lessee or grantee to bind herself and her assigns by any covenant running with or relating to the demised premises, the same as if she were a *féme sole.* For what purpose? Not with a view of allowing her to be held personally responsible at law; else why restrict it to covenants running with or relating to the demised premises? But clearly for the purpose of giving the landlord all the rights and remedies against the property itself which he would have in case the lessee were a *féme sole.*

Such a construction is reasonable, fair and consistent with the object of the Act as recited in the preamble. It gives full effect to every part of the law, and is not obnoxious to the grave objections and inconveniences which necessarily follow the construction contended for by the appellant.

According to her construction, the Act not only authorized a married woman to lease property without the consent or concurrence of her husband—certainly a very long stride in the direction of the entire· separation of the interest of husband and wife—not only made her personally liable upon her covenants contained in such lease, and bound all her other separate estate for the performance thereof, thus virtually destroying the husband's marital rights therein, but it actually made him liable upon a covenant into which he never entered; of which he may have been entirely ignorant; to which he may have objected, and against which he may have protested and fought to the last extremity. The letter of the statute requires no such construction, and even if it did, that which is not within the spirit of an enactment is not

within its letter. *Mayor and City Council of Baltimore vs. Root,* 8 *Md.,* 95.

If such had been the intention of the Legislature, it would scarcely have been less careful and explicit in its expression in this Act than in the Act of 1872, chapter 270, which, for the first time, authorized an action at law against a married woman upon a contract executed during coverture. Nor would it have failed to guard the rights of the husband by requiring him to join in the execution of the contract sought to be enforced, as was done by the latter Act.

But let us suppose, for the sake of the argument, that the Act was intended to enable a married woman to be held liable personally upon her covenant.

In what form is that liability to be enforced?

Is the ordinary jurisdiction of Courts of equity over the affairs of married women to be ousted, and is a new and unheard of jurisdiction to be given to Courts of law by mere implication? The statute makes no provision on the subject; no machinery is provided by which this extraordinary covenant is to be enforced; no common law jurisdiction in such a case—none given by statute. What Court will assume to take cognizance of such an action, until the authority is expressly given by the Legislature? *Groome vs. Gwinn,* 43 *Md.,* 572.

But again, supposing the action to be properly maintainable against the wife, upon what theory can the husband be held liable on a covenant into which he never entered?

In all actions *ex contractu* against several, it must appear upon the face of the pleading that the contract was joint. 1 *Chitty on Pleading,* 44; *Walcott vs. Canfield,* 3 *Conn.,* 198.

And the fact that the defendants are husband and wife does not alter the law upon this point. 1 *Chitty on Pleading, (mar.)* 59.

　By the Act she is a *fême sole* for the purpose of executing the covenant; why not also for the purpose of its enforcement? In equity the husband is always a proper party for conformity, and to enable him to protect his interests and those of his wife, while the decree may be so framed as not to prejudice or bind him individually.

But at law, if he is a proper party at all, the judgment will bind him as well as the wife, and his property may be taken for the debt of another.

The practice in such a case should be similar to that in attachments against married women as *fême sole* traders, in which the husband is never joined. *Brent, Trustee vs. Taylor*, 6 *Md.*, 58; *Crane vs. Seymour*, 3 *Md. Ch. Dec.*, 483; *Bridges & Wood vs. McKenna*, 14 *Md.*, 258.

ALVEY, J., delivered the opinion of the Court.

This is an action brought on a separate covenant of a married woman, contained in a lease, against the lessee and her husband jointly. The covenant is to pay a certain annual rent for the premises, and all taxes thereon; and the breach alleged is the non-payment of rent accrued due, and certain taxes that have been assessed.

The defendants demurred to the declaration; and the grounds of the demurrer are, according to the contention of the defendants, 1st, that a married woman is not suable at law upon breach of a covenant made during coverture; and, 2nd, that if the action be maintainable against the wife, it was error to join the husband.

Whether these positions or either of them be well taken, depends upon the proper construction of the second section of the Act of 1867, ch. 223. That Act adds two sections to Art. 45, of the Code; and by the first of these additional sections, it is provided that, in all cases of leases for definite terms to married women, if the rent reserved remain in arrear for ninety days, the landlord shall have the right to levy distress for such rent, "in the same

Worthington *vs.* Cooke.

manner as if the lessee was a *fême sole;* " and if there be
no sufficient distress found upon the premises, he shall
then have the power to make re-entry, or bring such action
for the recovery of the demised premises, as he might do
if the lessee were a *fême sole,* and had covenanted for the
payment of the rent, and to suffer such re-entry to be
made.    The second section of the Act, the construction of
which is particularly involved in this case, reads thus:
"In all deeds hereafter made to married women of real
estate or chattels real, it shall be competent for the grantee
or lessee to *bind herself* and *her assigns,* by any covenant
running with or relating to said real estate or chattels
real, *the same as if she was a fême sole."*

As a general principle it is incontrovertibly true, that,
at common law, a married woman cannot contract so as to
make herself liable ; though upon the principles of a
Court of equity she may contract so as to bind her sep-
arate estate ; and it is equally true, as a general proposi-
tion, that a *fême covert* cannot be sued alone at law.    But
to both these general propositions there have been, from
an early period in the history of the common law, certain
exceptions allowed, not only for the benefit of the wife,
but for the benefit and protection of those with whom she
might contract.    As, for instance, if the husband was
banished or had abjured the realm, (*Co. Litt.,* 133 *a;* ) or
if the husband be an alien residing abroad ; in such cases,
the wife would not only have the capacity to contract, but
she would be capable of suing and of being sued alone,
as a *fême sole.      Deerly vs. Duchess of Mazarine,* 1 *Ld.
Raym.,* 147 ; *Walford vs. The Duchess of Pienne,* 2 *Esp.
N. P. Rep.,* 554; *De Gaillon vs. L'Aigle,* 1 *Bos. & Pull.,*
357 ; 2 *Kent Com.,* 155.    There is nothing, therefore, very
anomalous, even at the common law, in a married woman
being allowed the capacity of and treated as a *fême sole,*
under special circumstances.

In the cases just mentioned the power to contract, and
the incidental right to sue and liability to be sued alone,

were allowed from the force of circumstances and the necessity of the case; but the right of a *féme covert* to contract in reference to her estate, and the consequent right to sue and her liability to be sued, have been greatly extended in recent times by statute; and the statute under consideration is only an instance of the amplification of that power. But, while the statute before us is explicit in conferring the power to contract, and in declaring that the covenants authorized to be made shall be binding on the *féme covert* as if she was in fact a *féme sole*, it is insisted that, as the statute is silent as to the remedy for the enforcement of the covenants, the common law principle applies, that a *féme covert* is not suable at law on a contract made during coverture, and that the only remedy is by bill in equity. Whether this be so or not depends upon the intention of the Legislature, as we may gather that intention from the terms and provisions of the statute.

Why should the remedy be by bill in equity rather than by action at law on the covenant? The construction of the covenant and extent of liability thereby incurred are purely legal questions, and a Court of law is the proper *forum* in which to ascertain and award the *quantum* of damage sustained by reason of the breach of the covenant. As will be observed, the statute creates no specific lien or charge upon the property of the party making the covenant, to be enforced in a Court of equity. The covenant creates a personal obligation, and the party making it is bound not as a *féme covert*, but as if she were a *féme sole*. Any property that she may hold under the provisions of the Code as her separate estate may be made liable for the satisfaction of any recovery that may be had on the covenant. A Court of equity, in affording relief against the separate estate of a married woman, does not proceed against her *in personam*, but against the property only. No mere personal decree can pass against her, unless ex-

pressly authorized by statute. *Francis vs. Wigzell*, 1 *Madd.*, 258; *Aylett vs. Ashton*, 1 *M. & Cr.*, 105; 2 *Sto. Eq.*, *sec.* 1397. Here, by the terms of the statute, she has bound herself and her assigns, and the remedy fit and appropriate for the enforcement of such an obligation is an action at law. The remedies given by the first section of the statute are purely of a legal character, and the party is to be proceeded against as if she were a *féme sole*, and we can perceive no possible reason for supposing that the Legislature intended a different character of remedy for the enforcement of the covenants authorized to be made by the second section of the statute. The covenant here being for the payment of rent and taxes, it is a covenant that runs with the land, and is, therefore, embraced by the terms of the statute, (*Mayhew vs. Hardesty*, 8 *Md.*, 479; and *Lester vs. Hardesty*, 29 *Md.*, 50;) and we think the remedy upon it is by action at law.

Then, the next question is, whether it was error to join the husband as co-defendant with the wife. Upon this question, we are clearly of opinion he should not have been so joined. The wife was authorized to enter into the covenant as if she had been a *féme sole*. She is therefore, in respect to the covenant and the remedies thereon, put upon the footing of a *féme sole*. She was authorized to make the covenant without the joinder of her husband, and without any reference whatever to his approval or disapproval; and that covenant is alone binding upon her and her assigns. If the husband was required to be joined as a defendant he would not only be subject to costs, but, according to the principles of the common law, the judgment would be joint, and he would be made liable for the breaches of a covenant to which he was not a party, nor bound by any privity whatever. This would be manifest injustice, and a result that the statute never was intended to produce. Not being himself a party to the contract, if, by being made a co-defendant in an action

for the breach, he could be made liable for the damages recovered, he would be entirely at the mercy of his wife and those with whom she might contract; and notwithstanding the wife be given the power to contract as if she were a *féme sole,* he would, in effect, be made to stand surety for the performance of the covenant, even though it be entered into against his positive remonstrance. The wife being authorized to contract as if she were a *féme sole,* the action must be maintained against her as if she in fact possessed the capacity of that *status,* and without reference to her coverture.

Concurring with the Court below in sustaining the demurrer to the declaration, we shall affirm the judgment; but we shall remand the cause under sec. 16 of Art. 5 of the Code, as modified by the 8th rule respecting appeals to the end that, by proper amendment, the cause may be tried upon its merits.

*Judgment affirmed, and*
*cause remanded.*