## ADDIE V. BARRON AND ALONZO C. BARRON *vs.* GEORGE W. WHITESIDE, TRUSTEE.

*Mortgages—Right of Mortgagee to Rents and Profits Upon Demand After Default and Before Sale—Application by Assignee for Creditors of Rents of Mortgaged Leasehold Property to Payment of Taxes and Ground-rent.*

Where a trustee under an assignment for the benefit of creditors takes possession of mortgaged leasehold property, and collects rents therefrom, the mortgage being overdue at the date of the assignment, the taxes, ground-rent and interest being in arrear, and the mortgage security being insufficient, the trustee is bound, on demand made, to apply rents so collected to the taxes, ground-rent and interest.

Where in such case the mortgagee makes demand upon the trustee for possession of the property and upon refusal thereof gives notice to the tenants not to pay rent to the trustee, he is entitled, upon application to the Court administering the trust, to the rents collected by trustee after such demand for possession.

When a mortagor is allowed to remain in possession after default he is entitled to collect for his own use the rents and profits, but after a demand for possession by the mortgagee or a demand of the rents, then the mortagee is entitled to the same.

Appeal from an order of the Circuit Court No. 2, of Baltimore City (STOCKBRIDGE, J.), overruling exceptions to an auditor's report, and finally ratifying the same.

The cause was argued before MCSHERRY, C. J., FOWLER, BOYD, PEARCE and SCHMUCKER, JJ.

*S. S. Field*, for the appellants.

1. The mortgages being in default, the mortagee had *the right to the possession;* and having *demanded* possession of the trustee, and having the right to it, the trustee committed a *wrong* in refusing to yield the possession, and to permit the trustee to retain rents collected *after* he had *wrongfully* refused to yield the possession to the mortgagee, would be to permit him to profit by his own wrong. *Dow* v. *R. R.*, 124 U. S. 654–5.

In many of the States a mortgage is no longer regarded as a conveyance, and the mortgagee has no rights except to sell the land, as for example, in Oregon, where, by statute, it is provided : "A mortgage of real property shall not be deemed a conveyance, so as to enable the owner of the mortgage to recover possession of the real property without a foreclosure and sale according to law." *Teal* v. *Walker*, 111 U. S. 251. Of course, a decision in such a State or upon a case arising therein (*Teal* v. *Walker*, came from Oregon), is not an authority in Maryland, where a mortgage retains its *common law character as a conveyance of the legal estate. Duvall* v. *Becker*, 81 Md. 537. In this State, upon default, the mortgagee is entitled to the possession. *Ibid.*, and *State* v. *Brown*, 73 Md. 512. And this right is not affected by our acts providing for speedy sales of mortgaged property, for these acts " have been always considered as having merely introduced an additional remedy, and not as having abrogated any pre-existing mode of relief to which the mortgagee was entitled." *Andrews* v. *Scotton*, 2 Bland, 630, 666. And the mortgagee may pursue all his remedies at once. *Andrews* v. *Scotton*, 2

Bland, 630, 665; *State* v. *Brown*, 73 Md. 512. In *Teal* v. *Walker*, the Supreme Court in one place say, that the mortgagee is not entitled to rents until he takes "actual possession," but this case, as before noticed, came up from Oregon, and besides, this expression is evidently used in contrast to the *legal* possession which the mortgagee has upon default, for further on the opinion says : " The American cases sustain the rule that so long as the mortgagor *is allowed* to remain in possession he is entitled to receive and apply to his own use the income and profits. * * * " And therefore this Court, in quoting *Teal* v. *Walker*, say accurately that the mortgagee was not entitled to the profits " so long as the mortgagor *was* entitled to *the possession*, thus putting the right to the rents not upon *actual* possession, whether *rightful* or *wrongful*, but upon *the right* to the possession. *Chelton* v. *Greene*, 65 Md. 277.

Of course the mortgagor's possession is rightful not only until default, but also afterwards, until the mortgagee demands possession. Accordingly, in a later case, the Supreme Court held that where a mortgagee was entitled to possession and demanded it, he was entitled to the rents from the time of the demand made, and that the bringing of a suit was a sufficient demand. *Dow* v. *R. R.*, 124 U. S. 654-5. And still later the Supreme Court says : " The general rule is that the mortgagee is not entitled to the rents and profits of the mortgaged premises until he takes actual possession, or until possession is taken in his behalf by a receiver, * * * or until, in proper form, *he demands and is refused possession.*" From opinion, *Freedman* v. *Shepherd*, 127 U. S. 502-3. If thereupon he proceeds by ejectment he recovers " mesne-profits from the time of notice by the mortgagee to quit, or, in the absence of such notice, or its equivalent, from the time of the commencement of the action of ejectment." *In re Bennett*, 12 Nat. Bank. Reg. 261; *Lyman* v. *Mower*, 6 Vermont, 345.

The principle upon which these decisions proceed is that a mortgagor *after* default is a tenant by sufferance, or at

will, to the mortgagee, and any act by the mortgagee suf-
ficient to put an end to the tenancy, puts an end to the
mortgagor's right to the rents.    So long as the mortgagee
" permits " the mortgagor to remain in possession the lat-
ter has a right to the rents, but when the *permission is with-
drawn the right ceases.*    Hence, a notice by the mortgagee
to the tenants (*Clark* v. *Abbott*, 1 Md. Ch. 475, 478, citing
*Moss* v. *Gallimore*, 1 Douglas, 278); or to an agent, ap-
pointed by the mortgagor to collect the rents (*Crosby* v.
*Harlow*, 21 Maine, 500 ; *Pope* v. *Briggs*, 9 Barn. & Cres.
245); a bill in equity (*Dow* v. *R. R.*, 124 U. S. 652); and
a petition in a pending suit (*In re Bennett*, 12 Nat. Bank.
Reg. 257, 264–5), have been held sufficient to entitle. the
mortgagee to the rents from the time such notice was given
or such bill or petition was filed.

The precise question involved in this case has been passed
on both in England and in this country.    In *Pope* v. *Briggs*,
9 B. & C. 245, a mortgagor appointed an agent to collect
the rents, and afterwards became bankrupt ; the mortgagee
notified the *agent* to pay the rents to him.    The assignee in
bankruptcy sued the agent, and the Court held that he
could not recover ; that the mortgagee was entitled to the
rents from the time of notice given.    Approved and fol-
lowed in *Wadilove* v. *Barnett*, 2 Bing. N. C. 538, and
*Crosby* v. *Harlow*, 21 Maine, 500.    In *In re Bennett*, 12
Nat. Bank. Reg. 257, assignees in bankruptcy took posses-
sion of properties encumbered by successive mortgages and
filed a bill to settle the estate, making all incumbrancers
parties.    Pending this proceeding Mrs. Bennett, one of the
mortgagees, filed a petition claiming the rents collected,
both theretofore and thereafter, by the assignees ; and the
Court held that such petition was a sufficient demand to put
an end to the right of the assignee to collect the rents, and
ordered the assignee to pay to Mrs. Bennett all rents col-
lected by him after the filing of said petition (but not be-
fore, for she had made no demand before).

In this case the mortgagee demanded possession of the

trustee on February 21, and, upon refusal, at once applied for a receiver. But the Court having possession of the property by its officer, the trustee, and therefore entire control of the rents, there was no necessity for the appointment of a receiver. So, that application was denied without prejudice to the mortgagee's right to continue her claim for the rents by petition in this cause, which she promptly did. She also notified the tenants on April 25, not to pay any further rents to the trustee, but notwithstanding he continued to collect them down to June 30. It can't be said that the mortgagee "permitted" or "allowed" the trustee to collect the rents after February 21. On that day she terminated the tenancy derived by the trustee from the mortgagor, and "thenceforward the Court held and received for her account." *In re Bennett*, 12 Nat. Bank. Reg. 265.

2. Apart from the right of the mortgagee to collect the rents, the trustee was certainly under some obligation to pay taxes and ground-rent upon the houses. It is *contrary to the first principles of justice that the mortgagee should be made to pay the ground-rent and taxes while the trustee collected the rents.* The mortgages from Wm. B. Whiteside to Mrs. Barron contained the usual provision that "until default" the mortgagor might hold possession and collect the rents upon paying the expenses, and continued "*which ground-rent and taxes,* mortgage debt and interest, the said mortgagor, for himself, his heirs, executors, administrators *and assigns, hereby covenants to pay when legally due and demandable.* So far as they bound the mortgagor to pay the *ground-rents* and *taxes,* these were *covenants running with the land,* and binding upon the appellee. *Lester* v. *Hardesty,* 29 Md. 50; *Worthington* v. *Cooke,* 52 Md. 297, 309; *Donelson* v. *Polk,* 64 Md. 501, 504. The narrowest construction of these covenants would require the trustee to pay the ground-rent of $37.50 upon each house, in all $112.50, which fell due March 1, 1898, *after* the assignment and *while* he was holding possession and collecting the rents thereunder.

But there were "*legally due and demandable*" at the time he took possession under the assignment, taxes for 1896 and 1897 upon each house, and inasmuch as the trustee, representing general creditors, had no right to make a profit out of land, at the expense of the mortgagee, who had a specific lien thereon, it was the duty of the trustee to apply *all* the rents collected by him from these houses towards paying the ground-rent and taxes thereon.    *Wolff's Appeal*, 106 Penna. 545 ; *Neff's Estate*, 39 Atl. Rep. 830, 831; 3 *Enc. of Law*, 2d ed., 116 and notes.    And the mortgagee having been compelled to pay the ground-rent and taxes, is subrogated to the rights of the landlord and State against the trustee.    *Orem* v. *Wrightson*, 51 Md. 34. " Real estate in the hands of the assignee is not exempt from the payment of taxes, whether assessed thereon before or after the assignment was made."    *Burrill on Ass.*, sec. 349 ; *Wright* v. *Wigton*, 84 Pa. St. 163 ; *Wynne* v. *Simmons*, 67 Texas, 40 ; *Jack* v. *Weinnett*, 115 Ill. 105.

The appellee acted upon these principles in this very case in regard to two other pieces of mortgaged property which came into his hands, Nos. 709 and 713 N. Fremont avenue. The trustee sold these properties subject to the mortgages for $190 and $225, respectively, together $415.    But the trustee paid on these mortgaged properties overdue and accruing taxes, ground-rent, water-rent and interest on the mortgages, down to the last day he held possession, amounting (exclusive of the expenses of sale) to $628.73, or $213.73 *more* than the equities of redemption sold for, and to make up the deficiency took rents collected from the houses mortgaged to Mrs. Barron, upon which he paid *no ground-rent, water-rent, taxes or interest;* and the auditor apparently thought it proper for the trustee to pay *all* the expenses on the mortgaged property on Fremont avenue and *none* on the mortgaged property on Edmondson avenue.

It is true he sold the equities of redemption in the Fremont avenue houses, and did not sell the equities in the Edmondson avenue houses, simply because they were worth

less than nothing ; no one would have taken the latter as a gift ; but from both he received money, and he was under an equal obligation to pay expenses on both, whether his receipts were from rents or sales. Were the trustee permitted to make his own rule of justice and equity, he could not claim more than the *net* income of the houses for the time he held them. This rule would require him to pay the proportion of ground-rent, water-rent, taxes and interest on the mortgages for the four and a-half months he held possession and collected the rents, which would amount to about $230. So that, viewed in any light, whether that the mortgagee had the right, after demand made, to the possession of the property and the incidents thereto ; or that it was the trustee's duty to apply the rents collected to ground-rent, taxes, etc.; or from a broad principle of natural justice, we submit that this Honorable Court will not make the appellant *bear the burdens* while the appellee *reaped the benefits* of the mortgaged property. "*Qui sentit commodum debet sentire et onus.*" *Wolff* v. *Mayor*, 49 Md. 449 ; *Gough* v. *Manning*, 26 Md. 347.

3. The trustee will claim that he has no funds with which to meet the claim of the appellant ; that he has paid out all the rents collected from the houses mortgaged to her. But he has paid *no* expenses on *these houses* or for the collection of the rents therefrom ; he certainly knew that the appellant contested *his* right to collect said rents, and actively insisted upon *her* rights thereto ; and if the trustee had no right to collect them, or if it was his duty to have applied them to the expenses on said houses, he cannot relieve himself by saying that he paid them out for expenses *on other property*, or for *his commissions* or *counsel fees*. *Slingluff* v. *Smith*, 76 Md. 559 ; *In re Cohn*, 6 Nat. Bank. Register, 379.

In *In re Bennet, supra*, where a mortgagee claimed and was allowed rents collected by the assignee in bankruptcy, the special master ruled that such rents "*could not be applied to the payment of any other counsel fees and expenses than*

*such as were incurred for the benefit of that fund"* (12 Nat. Bank. Reg. 259); and *that part* of the report was affirmed by the Circuit Court (Ch. J. Waite), the report being reversed *only as to the time from which* the mortgagee was entitled to the rents.

A trustee, who in good faith but unsuccessfully defends a claim made upon him, will be allowed his costs and counsel fees out of other funds rightfully in his hands. *Weil* v. *Lehmayer*, 74 Md. 81. But not at the expense of the party whose claim he has wrongfully, though in good faith resisted. *Haydock* v. *Smith*, 76 Wisc. 579, 582, cited with approval in 76 Md. 562; *B. & O.* v. *Brown*, 79 Md. 443.

*H. P.* and *R. E. Jordan*, for the appellee.

The mortgagor is the substantial owner of the property; he can lease, sell or otherwise disposed of it, and of the rents and profits thereof, *until after foreclosure and sale*. *Kelly's case*, 32 Md. 449; *Gantt's case*, 39 Md. 140; *Lannay's case*, 30 Md. 550; *Leeds* v. *Clifford*, 4 Central Reporter, 149; *Wilkins* v. *French*, 20 Maine, 116, 119; *City of Norwich* v. *Hubbard*, 22 Conn. 587; *1 Hilliard on Mortgages*, ch. 8, p. 151. He can recover for damages to the property. *A. & E. R. R. Co.* v. *Gantt*, 39 Md. 115. He can insure. *Washington F. I. Co.* v. *Kelly*, 32 Md. 439, 449. He can sue and recover in ejectment. *Georges Creek C. & I. Co.* v. *Detmold*, 1 Md. 237. A mortgagor while allowed to remain in possession, although there has been a breach in the condition of the mortgage, is entitled to receive the rents and profits to his own use, and is not liable to account for them to the mortgagee; and this is so whether the lease is made before or after the mortgage. A mortgagee may have the right to take possession upon a default, and if he does not exercise this right he cannot claim the profits. It is only after a sale under the decree (except where the statutes provide otherwise) that the mortgagor is wholly divested of title, and consequently of the right of possession. *Jones on Mortgages*, secs. 670 and

771.  The owner of the equity of redemption is at law entitled to the rents and profits of the mortgaged premises until the sale under the decree of foreclosure. *Lannay's case*, 30 Md. 550; *Astor* v. *Turner*, 11 Paige, 436; *Howell* v *Ripley*, 10 Paige, 43.

PEARCE, J., delivered the opinion of the Court.

This is an appeal from an order of Circuit Court No. 2, of Baltimore City, overruling exceptions to an auditor's account and report, and finally ratifying the account.

Two questions of law are presented :

1st.  Where a trustee, under an assignment for the benefit of creditors, takes possession of mortgaged leasehold property, and collects rents therefrom, the mortgage being overdue at the date of the assignment—taxes, ground-rent, and interest being in arrear, and the mortgage security being insufficient, is he bound, on demand made, to apply rents so collected, to such taxes, ground-rent, and interest?

2nd.  Where the mortgagee in such a case makes demand upon the trustee for possession of the property, and upon refusal thereof gives notice to the tenants not to pay rent to the trustee, is he entitled, upon application to the Court administering the trust, to the rents collected by the trustee—after the mortgagee's demand for possession ?

Both these questions were by the Circuit Court determined in the negative.

The assignment was made by Wm. B. Whiteside to his brother, Geo. W. Whiteside, January 1st, 1898. Under it he took possession of three houses on Edmonson avenue, on each of which Mrs. Barron held an overdue mortgage for $1,000.   There was also due on each of these houses

taxes for 1896 and 1897, amounting to . . . $108 51

Semi-annual ground-rent due Mch. 1st, '98 . . 37 75

Water-rent for 1897 . . . . . . . . . .   7 18

Total on each house . . . . . . . . . $153 44

Aggregating on the three houses . . . . . $460 32

Mrs. Barron's demand for possession of the property was made February 21st, 1898, and between that date and June 30th, 1898, the trustee, as shown by his report, collected rents from these three houses amounting to $207.30. On refusal of possession, Mrs. Barron filed a petition in Circuit Court No. 2 in said trust estate, for a receiver to take possession of said houses, and collect the rents for her benefit as mortgagee, which application was refused without prejudice. The record does not disclose the ground of this refusal, but we presume the Court treated the trustee as a receiver, holding for the benefit of whomsoever in the end it should be found to concern, and liable to account accordingly. Mrs. Barron's notice to the tenants not to pay their rent to the trustee was given April 25th, 1898.

On February 23rd, 1898, she filed petitions under the consent-clause in her mortgages, and under decrees thus obtained, the three houses were sold June 3rd, 1898, the auditor's account showing a deficiency on each house of $417.64. On May 9th, 1898, she filed a petition in the trust estate, setting forth all the facts up to that date, and asking that the trustee be required to account to her for all rents collected from these three houses after her demand for possession, and to pay over to her the amount thereof (less a proper commission thereon) to be applied on said taxes, ground-rent and interest. The trustee answered this petition May 21st, 1898, not denying any of its averments, but setting up a negotiation between Mrs. Barron and himself for the conveyance to her of these three houses in settlement of her mortgages, which Mrs. Barron finally decided not to consummate, and also alleging that by reason of her delay in selling said houses under her decree, he was hindered and delayed in the execution of his trust, to the prejudice and loss of the general creditors ; alleging that these three houses were worth as an investment to Mrs. Barron $1,400 each, and denying her right to demand possession of the property, or receipt of the rents thereof, except after foreclosure. The Court thereupon referred the

matter to the auditor to state an account, and to award, or apply the rents as he deemed proper, subject to exception to his report.   The auditor reported, without stating his reasons, that Mrs. Barron was not entitled as mortgagee to the rents, and he distributed the whole fund in the hands of the trustee, including the $207.30 collected as rents from these three houses, to the costs and commissions of the trustee, to interest on mortgages on two other houses on Fremont avenue, which he took as assignee, and to taxes, water-rent and ground-rent due thereon; to a judgment against Wm. B. Whiteside, and to a fee of $75.00 to the trustee's counsel for contesting Mrs. Barron's claim to these rents. ·

To this account of the auditor Mrs. Barron excepted, and the Court overruled the exceptions, and ratified the account; but as no opinion was filed we are not advised of the reasons which controlled the Court.

As to the first question:   In each of Mrs. Barron's mortgages there was a provision that until default was made, the mortgagor might hold and possess the premises, and receive the rents and profits thereof, upon paying in the meantime, the ground-rent and all taxes on the premises; and there was an express covenant· by the mortgagor, for himself and his assigns, to pay the same when legally demandable.   This covenant runs with the land, and binds the appellee.   *Mayhew* v. *Hardesty*, 8 Md. 495; *Worthington* v. *Cooke*, 52 Md. 309.

At the time the appellee took possession of these houses, the taxes for 1896 and 1897 upon each house were legally due and demandable, amounting together to $325.53, or more than the $207.30 collected as rents.   In addition to this, the ground-rent of $37.50 upon each house fell due March 1st, 1898, while the trustee was in possession and was collecting these rents.   An assignee for the benefit of creditors succeeds only to the rights of his assignor, and takes the property subject to all existing liens and equities.   As expressed in *Wright* v. *Wigton*, 84 Pa. St. 163: "The as-

signee is the mere representative of the debtor, enjoying his rights only, and bound where he should be bound. Nor are the creditors, for whom he holds the property in trust, purchasers for value. *They have no title to the property assigned. They acquire only* the right to have enforced the duty undertaken by the assignees." In *Burrill on Assignments*, p. 489, it is laid down that "Real estate in the hands of an assignee is not exempt from the payment of taxes, whether assessed thereon before or after the assignment was made." See also *Amer. and Eng. Ency. of Law*, vol. 3, 2nd ed., p. 116, and cases there cited. *In Wolff's Appeal*, 106 Pa. St. 545, where land had been assigned for the benefit of creditors subject to incumbrances, it was said "the mere rent of the land in the hands of the assignee, solely the product of the land itself, should be applied on those prior liens which would be entitled to the proceeds of the land if sold."

In the present case, if the tax-collector and the owner of the ground-rent had filed petitions in the case asking that the trustee be required to apply the rent in his hands to keep down the taxes and ground-rent, we cannot doubt he should have been required to do so.

It appears from the record that the trustee sold the two Fremont avenue houses, which he held, for $415 above the mortgages thereon, and that he paid out of the total assets in his hands, for taxes, ground-rent, water-rent, and interest on the mortgages on these two Fremont avenue houses, $628.92, or $213.92 more than he received from their sale. In other words, he applied the $207.30, which he collected as rents from the three Edmonson avenue houses, to aid in paying the charges above-mentioned on the Fremont avenue houses, while paying no taxes, ground-rent, water-rent, or interest on mortgages on the Edmonson avenue houses. Mrs. Barron having been forced to pay these charges out of the proceeds of their sale by her, notwithstanding it resulted in a large deficiency on her mortgages, she was entitled to be subrogated to the rights of

the State and city, and the owner of the ground-rent, against the trustee, as was decided in *Orem* v. *Wrightson*, 51 Md. 34, in the case of the sureties of a tax-collector who had paid the amount due the State by the collector, and in the present case the auditor's account should have recognized and enforced this right of subrogation.

We think the Court was in error also in denying the mortgagee's rights to the rents claimed by her, and though not necessary to the decision of the case, since the taxes and ground-rent which we have said should be allowed, exceed the rents of the houses, we regard the matter as of sufficient future importance to warrant its determination now.

It is the settled law of this State that upon default the mortgagee is entitled to possession. It was so held in *Jamieson* v. *Bruce*, 6 G. & J. 72, and in the recent case of *Richardson* v. *Balt. and Del. Bay R. R.*, *ante*, p. 126, it was observed that this Court and its predecessors have followed more strictly the common law doctrine as to the rights of mortagor and mortagee, than most of the Courts of the country, though it was there held there was no reason why the right to possession cannot be continued in the mortgagor, even after default, *by agreement of the parties.* In *State* v. *Brown*, 73 Md. 512, the Court said: " By such default the mortgagees have the right to foreclose, to ask for the appointment of receivers, and to enter and take possession of the mortgaged property. These are remedies, to which, in the absence of covenants to the contrary, the mortgagee is entitled upon the default of the mortgagor." He may pursue all his remedies at once, and Acts of Assembly providing for sales under decrees or powers, are cumulative and concurrent remedies, and do not abrogate any pre-existing mode of relief. *Andrews* v. *Scotton*, 2 Bland, 666.

No authority, satisfactory to this Court, can be produced for the unqualified proposition of the appellee, " that the mortagor can sell or lease the property and dispose of the

rents and profits thereof, until after foreclosure and sale,"
and that, "it is only after a sale under a decree, that the
mortgagor is wholly divested of title, *and consequently of
the rights of possession.*" This is only true where the
mortgagee relies exclusively upon decree for sale or fore-
closure, and has not resorted, in addition, to the pre-exist-
ing remedies to obtain possession and to receive the rents.
CHANCELLOR KENT accurately stated the doctrine as fol-
lows: "The mortgagor has a right to lease, sell, and in
every respect to deal with the mortgaged premises as
owner, *so long as he is permitted to remain in possession.*"
It is not merely *actual possession* which controls the per-
ception by the mortgagor of the rents and profits, after de-
fault, but the *right to the possession*, and hence this Court
said in *Chelton* v. *Green*, 65 Md. 277: "The rents and
profits were not pledged, so long as the mortgagor was en-
titled to the possession." And with like careful discrimina-
tion the Supreme Court of the U. S. said in *Dow* v. *Mem-
phis and Little Rock R. R.*, 124 U. S. 652, that "the
mortagor is not bound to account to the mortgagee for
earnings, while the property is in his possession, *until a
demand made therefor or for a surrender of possession under
the mortgage.*" And in *Freedman Co.* v. *Shepherd*, 127 U. S.
502, the rule was said to be that, "the mortgagee was not
entitled to the rents and profits of the mortgaged premises,
until he takes actual possession, or until possession is taken
in his behalf by a receiver, *or until in proper form he de-
mands, and is refused, possession.*" Here demand was duly
made for possession upon the trustee, and was refused, ap-
plication was made for a receiver, and the petition was dis-
missed without prejudice, evidently, only because, as was
said by CHIEF JUSTICE WAITE in a similar case (*In re Ben-
nett*, 12 Natl. Bankruptcy Register, 265), there was no
necessity for the appointment of a receiver, because in legal
effect the assignees already occupied that position. They
were acting for the benefit of whom it might concern. In
order to put an end to the authority of a mortagor to collect

the rents,  it is only necessary for the mortgagee to manifest his intention to do so.　For this purpose slight acts will be deemed sufficient, and in *Boyce* v. *Boyce*, 6 Rich. 302, where, as here, the mortaged property was in Court, a claim for the rents made to the Court by a party to the suit in the progress of the cause, was all that was required.　As the Court has the property and the parties within its jurisdiction, it has the power to adjudicate upon all conflicting claims."　In *Teal* v. *Walker*, 111 U. S. 249, the Court said: " The American cases sustain the rule that so long as the mortgagor *is allowed* to remain in possession, he is entitled to receive and apply to his own use the income and profits of the mortgaged estate; and although the mortagee may have the right to take possession upon condition broken, if he does not exercise the right, he cannot claim the rents. If he wishes to receive the rents, he must take means to obtain the possession."　This is the doctrine held in *Jones on Mortgages*, secs. 670 and 771, relied on by the appellee to sustain his proposition, to which we have referred;  and it is the doctrine declared in *Howell* v. *Ripley*, 10 Paige, 43, and *Astor* v. *Turner*, 11 Paige, 337, also relied on by the appellee for the same purpose.　Nor is there anything in *Lannay's case*, 30 Md. 550, cited by him, on which he can sustain his contention.

In the case at bar, Mrs. Barron took every means in her power to obtain these rents.　She demanded possession of the premises, and it was refused by the trustee; she demanded payment of the rents by the tenants to her, and her notice and demand was ignored; she asked for the appointment of a receiver, and this was refused without prejudice, because, as we have seen, the trustee already in legal effect occupied that position.

In *Clarke* v. *Abbott*, 1 Md. Ch 478, following Lord Mansfield (*Moss* v. *Gallimore*, 1 Douglas, 279), it was held, that a mortgagee, after notice to tenants in possession under leases made either before or after the mortgage, is entitled to the rents in arrear at the time of the notice, as well as to

those which accrue afterwards.    In *Pope* v. *Biggs*, 9 B. & C. 252, where such rents, after notice given, were received by the agent of the mortgagor after his bankruptcy, and were not actually paid over, he was declared to hold them for the persons entitled by law to receive them, and the mortgagees were declared thus entitled; and this case was followed in *Crosby* v. *Harlow*, 21 Maine, 500.    In *Bennett's case, supra,* there had been no demand previous to the filing of the petition in the case, and the mortgagee was *therefore* held entitled only to such rents as *thereafter* accrued.    But here, demand for possession was made on the trustee February 21st, 1898, and the mortgagee would be entitled to rents accruing after that date.    It appears from the record that $40 was collected from the tenants by the trustee, prior to that date, and as to that sum " his possession was in no sense that of the mortgagee.    It was that of a mortgagor with the assent of the mortgagee;" but this is not material to the result, because we have already said the trustee was bound to apply the whole of the rents in his hands, $207.30, to keep down taxes and ground-rent, which exceeded that sum.

In *Ober & Sons* v. *Keating, Trustee,* 77 Md. 100, Miss Davis had in Sept., 1890, purchased of Ober & Sons 20 tons of fertilizer, agreeing to secure payment by a chattel mortgage on the wheat upon which it was to be applied. Before executing any mortgage, in Dec., 1890, she made an assignment for the benefit of her creditors to Keating, who came into possession of the wheat crop, and it was held by this Court that the mortgage must be considered as made, that her assignee stood in no better position than she would stand, and that Ober & Sons being entitled to a lien upon the crop in the hands of the assignee, they were entitled to so much of the proceeds of sale of the wheat as was necessary to pay their claim.

Mrs. Barron, by virtue of her demand for possession upon the trustee, had as valid a lien upon the rents of the mortgaged premises thereafter received by him, as she had by

virtue of her mortgage upon the premises themselves. The right to this lien was an inherent part of the security taken when the mortgage was delivered, and an assignee cannot deprive a secured creditor of the benefit of his security.

In *Duval* v. *Becker*, 81 Md. 537, this Court held, that a mortgagor cannot before default, by his own act, and without consent of the mortgagee, abandon an easement appurtenant to the estate and expressly included in the mortgage, so as to bind the mortgagee, or prevent the easement from passing to the purchaser upon a foreclosure sale. In the course of the opinion CHIEF JUDGE McSHERRY said, in alluding to the equity doctrine that a mortgage is a mere security for the debt, and only a chattel interest : " But whatever his relation to the property may be as to third persons, the doctrine that he is regarded as the real owner of the mortgaged property, is subject to the express qualification that the mortgagee is not included. The doctrine applies *except as against the mortgagee.* * * * As between the mortgagor and mortgagee, therefore, the doctrine that the mortgagor is regarded as the real owner, does not, *and in view of the quality of estate conveyed by the mortgage*, cannot obtain, to the extent of permitting the mortgagor, by his own act, to exempt from the lien and operation of the mortgage, any part of the mortgaged property, * * or to force the mortgagee to accept as security for payment of the debt, anything less than the entire estate originally granted." The principle thus laid down, though announced upon a different state of facts, is applicable here. The mortgagee can no more be shorn by the act of the mortgagor, of his right upon demand and notice to subject the rents of the mortgaged premises to the payment of his debt, than he can be deprived of an easement appurtenant to the estate, and comprising, it may be, a most valuable part of his security.

The negotiations for the surrender and conveyance of the mortgaged premises, to the mortgagee, were founded upon no new consideration, the terms were not even definitely

ascertained, and the attempt resulted in no actual agreement. They can interpose no obstacle, therefore, to the right of the mortgagee to demand these rents.

Nor can her right be denied because she did not immediately proceed to sell the three houses under her decree of February 23rd, 1898. After making allowance for thirty days usually given in such decrees for bringing the money into Court and three weeks for advertisement, sale could not have been expected earlier than the middle of April. It was made June 3rd. This delay of five weeks cannot be laid hold of to defeat a clear legal right, especially as there is nothing to show that the other creditors have suffered thereby.

It follows from what we have said, that the order of the Court below must be reversed and the cause remanded for further proceedings in conformity with this opinion.

> *Order reversed with costs above and*
> *below, and cause remanded.*

(Decided June 21st, 1899).