# THE COMMERCIAL BUILDING AND LOAN AS-SOCIATION OF RICHMOND, VA., vs. LEWIS H. ROBINSON, JR.

*Liability of Assignee of Mortgaged Leasehold Property on Covenant in the Mortgage to Pay Ground Rent and Taxes—Covenants Running with the Land.*

Covenants to pay ground rent and taxes on leasehold property, con-tained in a mortgage thereof, run with the land and bind the assignee of the mortgagor so long as he holds the term. The foreclosure of the mortgage does not disentitle the mortgagee to maintain a suit against such assignee of the leasehold to recover the ground rent and taxes due while the term was vested in him, the mortgage debt not being fully paid by the proceeds of sale.

The failure of the assignee of leasehold property, subject to a mort-gage, to pay the ground rent according to the covenant in the mort-gage is a default which puts an end to his term and the legal estate being thereby vested in the mortgagee without actual entry, no suit can be maintained by the mortgagee against such assignee to recover ground rent subsequently becoming due, although the assignee re-main in possession of the premises.

Leasehold property was mortgaged to the plaintiff, the mortgagor cov-enanting to pay the ground rent and taxes. The property was after-wards assigned to the defendant, subject to the ground rent and to the mortgage. Defendant failed to pay the ground rent and taxes while he was in possession. These were paid by the plaintiff on a sale under his mortgage and the proceeds of the sale were insuffi-cient to discharge the mortgage debt. Upon a bill by plaintiff to re-cover from defendant such taxes and ground rent. *Held,*

1st. That the mortgage was in fact an assignment of the term and if it contained no provision that the mortgagor should remain in posses-

sion until default, then the defendant is not liable to plaintiff for the ground rent and taxes, since there was no privity of estate between him and the plaintiff.

2nd. That if the mortgage contained a provision that until default the mortgagor should remain in possession, then the defendant, as assignee of the mortgagor, is liable to the plaintiff for the ground rent and taxes falling due and unpaid by him while the term was vested in him, before the foreclosure of the mortgage.

3rd. That upon failure of the defendant to pay an instalment of ground rent when due, the term vested in the mortgagee without entry by reason of such default, and the privity of estate being thereby ended, the defendant is not liable for non-payment of ground rent which thereafter became due, although he remained in possession of the property.

Appeal from a decree of the Circuit Court No. 2, of Baltimore City, (STOCKBRIDGE, J.)

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, PAGE, BOYD, PEARCE and SCHMUCKER, JJ.

*E. P. Keech, Jr.,* and *J. P. Bruns* (with whom was *Archibald H. Taylor* on the brief), for the appellant.

*Joseph C. France,* for the appellee.

BOYD, J., delivered the opinion of the Court.

This appeal was taken from a decree sustaining a demurrer and dismissing the bill of complaint filed by the appellant against the appellee. The facts alleged in the bill which are material to the questions involved, are as follows : Robert A. Blay, who was the owner of the leasehold interest in twelve lots of ground, which had been assigned to him by the original lessee, conveyed said lots to the appellant, subject to the terms of the lease, by a mortgage dated December 9, 1895, to secure the moneys and payments mentioned in said mortgage "by the terms of which, among other things, said Blay covenanted to pay all taxes, ground rents, public dues and charges as and when the same became due and payable." On the 2nd of April, 1896, Blay and the appellant entered into an agreement by which they

agreed to apportion the amount of money advanced by the association between the several properties and that the lot known as 1210 Guilford avenue, should be held liable and subject only to the sum of $1,100.00, and the proportionate payments according to the plan of the association. On the 5th of May, 1896, Blay assigned that lot to the appellee "subject to the payment of the annual rent of one hundred and forty-three dollars, payable semi-annually on the first days of January and July in each year, and to the operation and effect of a mortgage from said Blay to said Commercial Building and Loan Association of Richmond, Virginia, to secure the loan of eleven hundred dollars."

The bill also alleges that the appellee entered into and remained in possession of the premises until the 8th day of July, 1897, upon which day a trustee, appointed in a cause wherein the appellant was complainant and Blay was defendant, sold said lot for default in the conditions of the mortgage for the sum of seven hundred dollars, "which sum was grossly insufficient to pay the mortgage debt, costs and accumulated expenses upon the property;" that during the time of his possession the appellee allowed the city and State taxes on said property for the year 1896 and due on the 1st day of January, 1897, to remain unpaid, amounting with interest and charges to $58.42, and also two instalments of ground rent due by and issuing out of said lot on the first day of January, 1897, and the first day of July, 1897, amounting to $71.50 and interest, and that the appellant was obliged to and did pay said sums of money. It then prays for a money decree against the appellee for the amount of said rent, taxes and interest so paid and for further relief. The questions presented are important, and by reason of some differences of opinion between the members of this Court, who sat in the case, which have been for the most part reconciled, it has not been decided as soon as would otherwise have been done.

Neither the lease, the assignment to Robinson, nor the mortgage, was filed as an exhibit, and in passing on the de-

murrer we are confined to such references to them as are in the bill. Although it is alleged that Blay, by mortgage, conveyed the lots subject to the terms of the lease, it does not state that there was any provision in it permitting him or his assigns to retain possession of the property until default and we would not be justified in assuming that there was or may have been such a provision. In this State, unless the mortgage does contain some provision to that effect, the legal title is vested in the mortgagee and he has the absolute right of possession in the premises until the mortgage is paid. *Jamieson* v. *Bruce*, 6 G. & J. 72 ; *Duval* v. *Becker*, 81 Md. 537 ; *Richardson* v. *B. & D. R. R. Co.*, 89 Md. 126. Such a mortgage on leasehold property is an assignment of the term. In *Mayhew* v. *Hardesty*, 8 Md. 479, Hardesty, who was the holder of an overdue mortgage on the leasehold interest, was held liable on a covenant to insure, which was in the lease, the Court saying " that when a party takes an assignment of a lease, as in the present case, the whole legal estate passes and he thereby becomes liable on the real covenants, *whether he became possessed or occupied the premises in fact or not.*" That case has been followed in *Lester* v. *Hardesty*, 29 Md. 50, and other decisions in this Court, and the principle thus announced as to the effect of a mortgage on leasehold property *after default* is equally applicable to a mortgage that does not contain a provision for the mortgagor to remain in possession. In both instances the legal title and right of possession are in the mortgagees. The term being assigned to the mortgagee, he is responsible on covenants running with the land, and the assignee of the mortgagor is not responsible for defaults not occurring while he still held the leasehold interest. The liability of an assignee of the term to the original lessor, or his assignee, grows out of the privity of the estate, in the absence of some contract between them, and as long as that continues he is liable upon all covenants that run with the land, but when that relation to the land ceases his liability for future breaches of the covenants is at an end. *Donelson* v.

*Polk*, 64 Md. 501. It is true the bill alleges that the appellee "thereupon entered into possession of said premises and did remain in possession of the same until the 8th day of July, 1897," but that is not sufficient to make him liable, as we have seen from the above quotation from *Mayhew* v. *Hardesty*. In this State it has been determined that a *suit at law* cannot be maintained against the assignee of a lessee, after an assignment of the term by him, for breaches of a covenant which took place while he still held the leasehold interest, the remedy in such cases being *in equity* alone. *Hintze* v. *Thomas*, 7 Md. 346; *Donelson* v. *Polk*, *supra*. For that reason this proceeding in equity was doubtless taken, but, although Courts of Equity do not regard mortgages in just the same light as Courts of Law do, when the legal effect of a mortgage on leasehold property is to vest the title and the right of possession in the mortgagee, and thereby take them from the assignee of the mortgagor, the latter is not responsible either at law or in equity for breaches occurring after the title so passes to the mortgagee. There was no privity of contract between the appellee and the appellant, and hence, irrespective of the question as to whether the covenants in a mortgage on leasehold property for the payment of rent and taxes run with the land, the appellee would not be liable after the assignment of the term to the mortgagee. The bill therefore, as it stands, is defective, and the demurrer was properly sustained for the reasons we have given. There is another defect in it which should be mentioned. If, as alleged, there was default on the first day of January, 1897, for non-payment of the taxes and ground rent then becoming due, unquestionably under the decision of *Mayhew* v. *Hardesty*, the appellee was not responsible for the alleged default on the first of the succeeding July, as the term was then vested in the appellant, even if there is a provision in the mortgage such as we have referred to above. The appellant and not the appellee was then liable for the ground rent, as the term had then passed out of the appellee into the appellant.

Although the mortgage was not filed with the bill, and hence we cannot consider it in passing on the demurrer, what purports to be a copy of it is in the appellant's brief. ·As we have authority under section 36 of Art. 5 of the Code, to remand the cause for further proceedings, without reversing or affirming the decree, if we be of the opinion that the purposes of justice will be thereby advanced, we will now consider the case as if the mortgage was before us. In the copy we find that there is a provision referred to by which it ·was agreed that until default was made the mortgagor or his assigns might retain possession of the mortgaged property. From what we have already said it can be seen that we are of the opinion that the ground rent falling due on the first of July, 1897, cannot be recovered, for the reasons stated, and hence we will confine further inquiry to the taxes and ground rent which matured on the first of January of that year. As between the owner of the reversion and the holder of the leasehold interest· there is no doubt that covenants for the payment of rent and taxes run with the land. It has been so decided in a number of cases in this State, among which are *Donelson* v. *Polk, supra*; *Lester* v. *Hardesty, supra*; *Worthington* v. *Cooke*, 52 Md. 297. In *Thomas* v. *Von Kapff*, 6 G. & J. 372, it was held that a covenant in a mortgage on real estate to effect insurance and apply the proceeds in case of loss by fire to the reparation of the insured property was a covenant running with the land, as·it was in effect a covenant to repair and rebuild. The insurance money had been collected by the mortgagor who deposited it in bank and died before he rebuilt. A bill having been filed by the executors of the mortgagee against the administrator of the mortgagor, and the proceeds of the sale of the property and the insurance money together not being sufficient to pay the mortgage debt, the Court below decreed that the complainant had a specific lien upon the insurance money and the Court of Appeals affirmed the decree, holding that the mortgagee had a qualified lien in preference to general creditors, and

also that it was a covenant running with the land. In *Barron* v. *Whiteside*, 89 Md. 448, this Court said that a covenant in the mortgage on leasehold property by the mortgagor for himself and his assigns to pay the ground rent and taxes on the premises when legally demandable, was a covenant running with the land. It is true that was a case between the mortgagee and the assignee of the mortgagor for the benefit of the creditors of the latter, and there were circumstances in that case which materially differ from those in this, but the general principle was clearly recognized that such a covenant in a mortgage did run with the land. There is a covenant in this mortgage to the same effect and almost in the same language as in that. We think, therefore, that this covenant must be treated as running with the land and so long as the mortgage was in force, and the appellee held the term, he was liable for the taxes and ground rent. There can be no doubt that he was liable to the owner of the reversion for the ground rent, and if he had paid him it would have been a discharge of that part of the covenant. But his failure to pay the ground rent and taxes added to the burden of the property and subjected the mortgagee to the risk of the loss of his security, unless he paid them. The owner of the reversion could, in due course of time, have proceeded to recover the property and the tax officer could have sold it for taxes, unless the appellant had paid the rent and the taxes due. The appellee did not assume the payment of the mortgage debt, and is therefore not responsible for it, or any part of it. That is not a covenant running with the land because the performance of it would at once divest the appellant of all interest in the mortgaged premises. *Glenn* v. *Canby*, 24 Md. 127. But the non-performance of the covenant to pay taxes or ground rent would "affect the quality, value or mode of enjoying the estate conveyed." It certainly would affect the value, to the extent of the taxes and rent accruing, and it would affect the mode of enjoying the estate by casting on the mortgagee the leasehold interest and thereby making it

liable to the owner of the reversion for future rent and also
for the taxes.   The liability of the appellee to the appellant
cannot be affected by the fact that when there was a default
by him the term vested in the appellant.   If the appellee
was the owner of the term and in possession when the de-
fault occurred it was *his* default, and recovery is sought for
the damage the appellant sustained by the breach of the
covenant by which the appellee was then bound.   It can,
therefore, make no difference that immediately after the
default the term passed to the appellant.   If the appellee
had at the end of the first day of January, 1897, assigned
the term to some one willing to take it, it would not have
relieved him of liability for the rent and taxes which became
due while he still held it and *a fortiori* it ought not to re-
lieve him against one upon whom he cast the term by reason
of his default.

The only other question we need consider is the effect
the foreclosure of the mortgage had upon the appellant's
right to recover these taxes and rent.   That has given us
more difficulty than any other question involved in the case.
The property was sold by the trustee to a third person for
less than the amount necessary to pay the mortgage indebt-
edness.   As we have seen, the appellee is not responsible
for the balance due on that indebtedness, as he had not
assumed it, but is he relieved of the payment of taxes and
rent which became due while he still held the leasehold in-
terest in the property, and hence owed it, simply because
the mortgage has been foreclosed?   It is true that neither
he nor the appellant had any further interest in the property
after the sale, and its ratification, but when the breach oc-
curred there was a privity of estate between them, and if, as
we have said, the covenant ran with the land, the appellee
was *then* responsible to the appellant for the breach.   The
reason that a Court of Equity takes jurisdiction, after the
assignee of the term has parted with it, is because there is
no longer any privity of estate (*Donelson* v. *Polk, supra*), but
as there was such privity at the time of the breach, and

hence the one was liable to the other, a Court of Equity grants the relief. Indeed, in England and some of the States of this country, an action at law is permitted even after the assignment of the term, but the contrary doctrine has been adopted in this State. The question is what was the relation of the parties when the breach occurred, not what it was or is afterwards. If the appellant had not paid the rent undoubtedly the owner of the fee could have proceeded against the appellee for it, and he was also liable for the taxes. Inasmuch as the appellant was required to pay the rent and taxes to protect as far as it could the property on which it held the mortgage, it should at least be subrogated to the rights of the parties entitled to the rent and taxes, even if there was any difficulty in proceeding on the ground that the appellee is still liable on the covenant running with the land. *Milholland* v. *Tiffany*, 64 Md. 460 ; *Barron* v. *Whiteside, supra.*

One objection to allowing the appellant to recover the taxes that suggested itself was that section 64 of Art. 81 of the Code, as amended, requires the party selling "under judicial process or otherwise " to pay all sums due and in arrears for taxes upon the property so sold, but the object of that statute is primarily to secure the payment of the taxes, and it also protects the purchaser, and in this case the bill alleges that the appellant had paid them. They were due by the appellee, and if they are distributed out of the proceeds of sale, it would, if the original mortgagor is financially responsible, work a hardship on him, as it would increase the balance due by him. They would add that much to his indebtedness, although the appellee was responsible for them and ought to have paid them. In *Barron* v. *Whiteside, supra,* it was said that the mortgagee was entitled to be subrogated to the rights of the State and city and the owner of the ground rent for taxes and rent paid out of the proceeds of sale under her mortgages. See also *Orem* v. *Wrightson*, 51 Md. 34.

The mere fact that the lien of the mortgage is extinguished

does not destroy the binding force of the covenants in it and so far as the appellee was bound by them, or was liable by reason of the privity of estate, a Court of Equity can compel him to perform the covenants for which he is liable. It could not be done at law, but we find no authority that would justify us in refusing the relief in equity. The case of *Hitchcock* v. *Merrick*, 18 Wis. 357, cited by the Court below, differs from this as there the mortgage was paid in full—the mortgagee having accepted the balance of the purchase money after the sale—and the whole mortgage debt was extinguished. Then, too, the mortgagee had purchased the property *subject to the taxes*. But the covenants in a mortgage do not necessarily fail because the lien of the mortgage is extinguished. The mortgagor is still liable on his covenant to pay the balance of the debt and why should not the appellee be still liable on the covenant for which he was bound, as assignee of the mortgagor? The owner of the reversion at the time of the breach is entitled to sue on a covenant running with the land, although he conveyed the property before he sues. On the same principle a mortgagee can sue for a breach on such a covenant, which took place while he still held an existing mortgage, although it is foreclosed before suit was brought. The case of *Thomas* v. *Von Kapff*, supra (if still followed in this State and we know of no reason for not doing so), would seem to be conclusive of this point. There the mortgage had been foreclosed and the proceeds of sale distributed to it, yet, by virtue of the covenant in it to keep the property insured and in the event of a loss by fire to apply the insurance money to rebuilding the property, a Court of Equity held that the fund was liable to the mortgagee's executors, although the bill was filed after the foreclosure sale and after the proceeds of sale had been distributed. In *Barron* v. *Whiteside*, *supra*, the mortgages were foreclosed before the amounts paid by her for taxes and ground rent were distributed to her, although she did file her petition to require the trustee to pay them before the sale under her mortgages, but it was after she had

commenced the foreclosure proceedings. It is true those cases were against the representatives of the mortgagors, but that can make no difference in considering this branch of the case, as we have determined that the appellee was responsible as the owner of the leasehold interest when the covenant, by which he was bound, was broken. The question is what was the relation of the parties on January 1st, 1897, and that relation determines the liability *vel non*, unless, of course, something was done afterwards to discharge the party who was then liable. The mere sale of the premises cannot operate as such discharge, whether it be by the deed of the party bound by the covenant or by a trustee authorized to sell by reason of the default. The mortgage debt is not only not paid, but the mortgagee to save what it has gotten out of the wreck has been compelled to pay what the appellee in equity and good conscience ought to have paid.

We are of the opinion, therefore, that the cause should be remanded, without reversing or affirming the decree, to the end that leave may be given to the plaintiff to amend its bill. As the bill is defective, but the principle contended for is correct, we will direct that each party pay half the costs in this Court and that the costs below abide the result of the case.

> *Cause remanded without reversing*
> *or affirming the decree, each side*
> *to pay one-half of the costs in this*
> *Court, and the costs below to abide*
> *the final result of the cause.*

(Decided February 9th, 1900).

PEARCE, J., delivered the following opinion, in part dissenting, and in part concurring.

I concur with the views expressed by the Court upon the two main questions, that the covenant of the mortgagor to pay ground rent and taxes on leasehold mortgaged premises runs with the land, so that the mortgagee may

sue the assignee of the mortgagor for breach occurring while he held the equity of redemption, and that the mere fact that the lien of the mortgage is extinguished by fore-closure, does not extinguish the covenant, but I do not concur in the refusal to allow the appellant to recover the instalment falling due July 1st, 1897, nor in the disposition made of the whole case, and I shall therefore give ex-pression to the views which I entertain.

The record does not contain a copy of the mortgage, but he appellant caused a copy to be printed in his brief, to-gether with the opinion of the Court below, which was also omitted from the record. There was no averment in the bill that the mortgage contained the usual clause that until default made, the mortgagor and his assigns should retain possession of the mortgaged property, and because of this defect in the bill, and the absence of a copy of the mort-gage in the record to supply this defect, the demurrer is held by the Court to have been properly sustained. But at the argument of the case in this Court, it was agreed by counsel, as I distinctly remember, that as the questions presented were important, and that, as shown by the opinion of the Court below, the case was heard and de-termined upon its merits, that the copy of the mortgage printed in the brief should be considered as if incorporated in the record. Had it been so treated, it follows, from the views expressed by the Court, that the demurrer should have been overruled, and the decree dismissing the bill re-versed, and in view of the agreement referred to, I am not able to concur in the disposition of the case as determined by the Court

The legal principles involved, though artificial, are well settled, and the difficulty in the case is found in their cor-rect application. These principles are stated with great clearness by Mr. Platt in his work on *Covenants*, (L. L. Vol. 18, side page 490) to which reference may be made for a most instructive exposition of the law upon that head, reproducing only a single line which states the funda-

mental proposition to be kept in view; viz., that " the assignee's obligation to perform the covenants running with the land, arises and endures, solely on the score of privity of estate." This Court has often illustrated this principle as in *Hintze* v. *Thomas*, 7 Md. 346; *Donelson* v. *Polk*, 64 Md. 501 and other cases. Mr. Platt also observes on page 465 that " by far the greatest number of cases regarding the liability of assignees (upon covenants) has arisen on demise of leaseholds," but it does not follow that the same privity of estate, which is requisite in those cases, may not exist between parties in other relations than those arising upon a mere assignment of leasehold estate. Indeed it is common knowledge that there is privity of estate growing out of other relations, and no satisfactory reason can be adduced for holding that it does not exist between mortgagor and mortgagee. On the contrary Mr. Coote in that division of his work on *Mortgages*, L. L. Vol. 3, side page 326, 327, which treats of privity, says: " The rights, powers, and interests of mortgagor and mortgagee are in many instances grounded on their respective estates in the land ; * * * * * and it may under some circumstances become essential to ascertain whether there is at common law, any, and what privity of estate between the parties, * * * * It is with deference suggested that *so long as the mortgagor or his heir is in possession of the land,* and the legal ownership is in the mortgagee, there must subsist a tenancy between the parties ; otherwise the mortgagor or his heir must hold in fee and as disseisor, * * * * The mortgagor *in possession* must hold of some one, and to say that his possession is that of mortgagor, is in fact leaving the question undecided." In *Jamieson* v. *Bruce*, 6 G. & J. 74, the Court speaks of the mortgagor in possession as " the mortgagee's tenant." And in *Georges Creek Coal Co.* v. *Detmold*, 1 Md. 237, Mr. Coote's doctrine was distinctly announced, and the covenant for possession by the mortgagor was declared to be a redemise ; and that decision was confirmed and extended

in the recent case of *Richardson* v. *Balt. & Del. R. R. Co.*,
89 Md. 126. Nor is the relation of landlord and tenant,
which thus exists between mortgagee and mortgagor, nec-
essarily terminated by mere default. It continues until
actual entry by the mortgagee, or other legal dispossession
of the mortgagor. That was the very point raised and de-
cided in *Richardson's case, supra,* where a mortgagor after
default made was allowed to recover in ejectment against
a third party who had entered as a trespasser, and that de-
cision is a striking indication of the spirit which guides the
Courts of this period in dealing with questions of this char-
acter. The relation of landlord and tenant between the
appellant and Blay being thus established, their privity of
estate follows as a necessary consequence, and when he
conveyed to the appellee his equity of redemption, he
divested himself of his privity of estate with the appellant
and transferred it to the appellee. Blay's covenant with the
appellant to pay all ground rent and taxes for which the
property mortgaged should become liable, when payable,
was inserted in the mortgage for the benefit of the mort-
gagee, and became one of the terms and conditions of the
redemise to Blay, operated by the covenant for possession
until default. When Blay assigned to Robinson, he trans-
ferred to him his privity of estate with the appellant, and by
reason of that privity, Robinson became liable to Hunting
for every breach occurring during his holding of the estate,
for which Blay would have been liable if he had not as-
signed. Blay's covenant in the mortgage was made with
the owner of the legal estate of the leasehold. It was
made for the benefit of the covenantee in his holding of
that estate, and cannot properly be regarded as a collat-
eral covenant.

In *Smith's Leading Cases*, vol. 1, part 1, 7th American
Edition, note to *Spencer's Case*, side page 140, it is said to
be settled " that when the relation of tenure is created by a
grant, all the covenants of the grantee. for himself and his
assignees which affect the land granted, will be a charge on

it, and bind every one to whom it may come by assignment." And it follows from what has been said that Blay's covenant with the appellant to pay the ground rent and taxes must be regarded as made in his capacity of grantee under the redemise, and it has been repeatedly held in this State that covenants for payment of rent and taxes under ordinary leases run with the land. *Mayhew* v. *Hardesty*, 8 Md. 479; *Lester* v. *Hardesty*, 29 Md. 50; *Worthington* v. *Cooke*, 52 Md. 309; *Donelson* v. *Polk*, 64 Md. 501.

In *Post* v. *Kearney*, 2 Comstock, 394, the covenant was to pay all rates, taxes and assessments imposed upon the premises. An assessment of $700 was imposed under the statute relating to the opening of streets, and the Court said: " This covenant affected the value, and the mode of enjoying the demised premises. It was more than a covenant collateral to the land, and was, therefore, assignable." Mr. Washburn in his work on *Real Property*, vol. 2, p. 14, says " covenants which form a part of the consideration for which the land, or some part of it, is parted with, between the covenantor and the covenantee, run with the land." Blay's covenant with the appellant formed part of the consideration for which it parted, under the redemise, with its right of possession as mortgagee. It was upon this principle that the case of *Norman* v. *Wells*, 17 Wendell, 136, was decided, and which carried the power of covenants to run with the land to the extremest limit allowed by law, extending the rule to a covenant not to erect another mill on land in the neighborhood which defendant had leased, because the covenant was to be performed for the benefit of the estate demised, though not relating to it, and to be performed off of it. I am not to be understood as adopting all that was said in that case, and cite it only to show the principle upon which I think the covenant in this case is fairly brought within the rule stated by Mr. Washburn.

In *Masury* v. *Southworth*, 9 Ohio St. 340, the Court said : " The real question must be, the covenant being one which may be annexed to the estate and run with the land, whether

such was the intention of the parties." And in view of all the authorities, which I have examined, I am clear in the conclusion that this is a covenant which *may* and which the parties intended *should* run with the land. There is no conflict or inconsistency between this view and the decision in *Glenn* v. *Canby*, 24 Md. 127, where the covenant to pay the mortgage debt was held not to run with the land. There was a covenant also in that case to pay the insurance and taxes, and the Court was careful not to embrace within the scope of the decision that covenant, which had by former decisions of this Court been held to run with the land ; as to taxes in the cases heretofore cited, and as to insurance, in *Thomas* v. *Von Kapff*, 6 G. & J. 372. The decision in 24th Md. was put distinctly and exclusively upon the ground that the debt of the mortgagor was a mere personal liability, not relating to nor affecting the condition, quality or value of the land, and that performance of the covenant would at once divest the covenantees of their interest in the land, so that the covenant by its very nature was incapable of adhering to and passing with the land. But the taxes and ground rent here are not debts of the mortgagor at all, except as they become such by their assumption under his covenant, and the performance of that covenant for their payment, would not divest the covenantee of its interest in the land, but would enhance its value as security for the mortgage debt by extinguishing, to that extent, a paramount charge upon the land. In 24th Md., the Court stated that privity of estate was a fundamental requisite to the right of recovery, but it did not intimate any absence of such privity. It did set forth the particulars in which the covenant failed to meet the requirements of the law in order to run with the land, and the inference is strong that if the covenant for taxes and insurance had been the subject of the suit, it would have been enforced against the assignee of the mortgagor. What has been said, I think, sufficiently answers the first ground taken by the learned judge below; that the covenant for taxes and ground rent is subordinate

to and collateral with the covenant for the mortgage debt, and that if the latter cannot run with the land, neither can the former.

The second ground taken by the Court below was that the mortgage had been extinguished by the foreclosure sale, and that the vitality of all the covenants had been necessarily destroyed thereby.    The authority relied on for this position is *Hitchcock* v. *Merrick*, 18 Wis. 361.    That case is cited in 1 *Jones on Mortgages*, sec. 77, to sustain the statement that such a covenant cannot be enforced *after the debt is discharged*, and that the effect upon the covenant is the same, whether the mortgagor voluntarily *pays the mortgage debt*, or whether it is *paid* by the mortgagee buying in the mortgaged premises at a foreclosure sale, but it is manifest in either case, that *full payment* of the debt is meant, since only after full payment, the mortgagee could have no interest in, or right under the covenant, the sole purpose of which was to protect the security held in the land for the mortgage debt.    But here the mortgage debt has not been paid, either by foreclosure, or by voluntary payment of the deficiency after foreclosure.    The bill avers, and the demurrer admits, that Keech, the trustee, under the decree, "sold the mortgaged premises to Allen D. Crutchfield for the sum of seven hundred dollars, which sum was grossly insufficient to pay the mortgage debt."    It is therefore clear that the appellant could *now maintain an action* against Blay upon his covenant to pay the mortgage debt, and that the mortgage is not extinguished as a result of the foreclosure sale, and the Court below was therefore incorrect in stating, as it did, that "if effect were given to appellant's contention, it would be to raise a subordinate covenant of the collateral to a higher position than the main covenant." Neither the covenant to pay the mortgage debt, nor the covenant to pay the ground rent and taxes, have lost their vitality.    Both are still in existence and of the same binding force now as before the sale.    It may be presumed, that the mortgagor, Blay, is insolvent, or the appellant would have,

resorted to his covenant to pay the mortgage debt, but insolvency, if he be insolvent, cannot change the character or quality of the covenant, or destroy an existing right of action thereon.    Though he be insolvent, to-day, he may be solvent to-morrow, and the appellant cannot be deprived of its right to reduce its cause of action to judgment, and await the contingency of future realization.    If that covenant be enforceable now, the covenant for payment of ground rent and taxes must also be enforceable now—and if it ever bound the appellee it must continue to bind him now.    Moreover, an examination of the case of *Hitchcock* v.*Merrick, supra,* shows that after purchase by the mortgagee at foreclosure sale, *and before suit brought on the covenant,* the mortgagor voluntarily paid the deficiency.    The mortgagee was afterwards obliged to redeem the premises, which were sold for certain taxes assessed upon them between the execution of the mortgage and the foreclosure sale, and the Wisconsin Court held that as the *whole mortgage debt was paid,* the covenants designed for its security were gone.    It does not appear, that it would have so held, if the *whole mortgage debt had not been paid.*    But if it be assumed that such would have been held by that Court, the decisions elsewhere upon that point are not in accord with that view.    In *Lockwood* v. *Sturtevant,* 6 Conn. 382, it was held "even where the mortgage debt was extinguished, the mortgage still remains in force notwithstanding, *and of consequence the* covenants to secure that title ;" And in *White* v. *Whitney,* 3 Metcalf, 81, it was held likewise, CHIEF JUSTICE SHAW saying that a conveyance of an equity of redemption is of an estate to which covenants real can be annexed, and that where such an estate is conveyed, and the grantor covenants to pay off and discharge the mortgage, and does so, " still the covenants in *futuro,* and *all covenants running with the land continue to be operative.*"    Art. 16, sec. 187 of the Code, referred to by the Circuit Court as authorizing a personal decree against the mortgagor for any deficiency on sale, was obviously enacted to avoid the delay and ex-

pense incident to a separate suit upon the covenant, and the remedy is cumulative. That section can in no manner affect the question whether the covenant runs with the land, or whether it is extinguished by foreclosure without payment in full of the mortgage debt.

In *Barron* v. *Whiteside* decided in this Court June 21st, 1899, 89 Md. 448, taxes and ground rent were allowed a mortgagee, under a similar covenant, as against the assignee of a mortgagor, under a deed of trust for the benefit of creditors, and while that case is not necessarily decisive of the present case, I think the principles by which we were there controlled lead naturally to the conclusion reached here.

I am informed that there has not been uniformity of opinion upon this question among the members of the Supreme Bench of Baltimore City one of the Judges having heretofore decided adversely to the views expressed by Judge Stockbridge, a case in all respects similar to this, except that there the bill alleged that the mortgaged premises were insufficient in value to satisfy the debt, should foreclosure proceedings be taken, and that plaintiff's security for her debt had been impaired by the wrongful act of the defendant in not paying the ground rent and taxes. The alleged insufficiency was established by testimony, and a personal decree was granted for the amount of the taxes and ground rent which defendant should have paid. Here the insufficiency is established, not by testimony of market value but as the result of actual sale. I cannot discriminate that case from this upon any sound legal principle.

The Court holds that the appellee cannot be made responsible to the appellant for the ground rent falling due July 1st, 1897, because default had been previously made in the non-payment of the instalment falling due January 1st, 1897, and because on that default, the term passed out of the appellee into the appellant, and the appellant, and not the appellee, was liable for the ground rent; and this is held to be the necessary result of the decision in *Mayhew*

v. *Hardesty*, 8 Md. 479.    But that was a case in which the assignee of the original lessor sought to recover under a covenant *in the lease*, (*not in a mortgage*,) to keep up the insurance on the improvements on the demised premises, from Hardesty, who held a mortgage thereon from the assignees of the original lessees, after default made by Hardesty's mortgagor, and it was held that though Hardesty had never actually entered, yet the effect of the default, (as between Mayhew and Hardesty,) was to pass the whole legal estate to Hardesty and that he thereby became liable to Mayhew on the real covenants.    I do not of course question the authority of that decision, and if this were a suit by Hunting, the original lessor, against Robinson, the appellee, I should concede that the appellant and not the appellee was liable to Hunting for the unpaid ground rent accruing after default made under the mortgage.    The original lessor has always a double remedy for his ground rent and taxes, one founded on privity of contract, against the original lessee, and another founded on privity of estate against him in whom, from time to time, the term may be vested, for such default as occurs during his holding of the term.

· But I cannot perceive how it follows from this that the appellant cannot recover from the appellee, as assignee of Blay and under Blay's covenant in the mortgage, ground rent which accrued during the appellee's occupation and enjoyment of the premises.    The fact that the appellant had become liable to Hunting under the covenant *in the lease* for this very ground · rent, only by reason of the breach of the covenant in the mortgage made by Blay himself and his assigns with the appellant, to pay such ground rent, should, in my opinion, be a strong reason for sustaining instead of destroying his recourse to that covenant made with him alone, and for the specific purpose of protecting his mortgage debt against default in the payment of said ground rent either by Blay or any assignee of Blay in actual lawful possession of the mortgaged premises as

the appellee was.  The covenant in the mortgage was in effect a covenant of indemnity against any loss to the appellant by reason of default in the payment of said ground rent concurrent with the occupation and enjoyment by the appellee of the mortgaged premises.   I do not perceive that this covenant in the *mortgage* can be impaired by the fact that upon appellee's default under the mortgage the term passed from him to the appellant, and that the appellant thereby became liable to *Hunting* under the covenant in the *lease.*

If it was in accordance with sound legal principles, as I believe it was, to hold in *Richardson* v. *Balt. & Del. Bay R. R.*, *supra*, after default made by a mortgagor, where by the terms of the mortgage notice was required to be given before enforcing the remedy for default, that the mortgagor is nevertheless entitled to maintain an action of ejectment against those relying simply on the mortgage, why should it not be equally in accordance with sound legal principles to maintain the right of action upon the mortgagor's covenant in this mortgage, the mortgagor, notwithstanding the default, being still in the possession and enjoyment of the estate.    If the mortgagor in possession after default, is to enjoy the privileges of ownership, why should he not also bear the burden ?   We said in Richardson's case " The mortgagor, when there is a covenant for redemise, is regarded both at law and in equity as the substantial owner of the property and if there be a redemise of the property by which the legal title and right to possession are vested in the mortgagor until default, can there be any reason why these rights cannot be continued, *even after default*, by agreement of the parties ? "    Here the mortgagor, after default, by tacit agreement was allowed to continue in possession until another default was made, and could have maintained ejectment under such possession, and I am unable to see why he should not continue liable to the appellant under his covenant with him until actually dispossessed.    I think the decree should be reversed and the cause be remanded for further proceedings.

(Filed February 16th, 1900).